BARATARIA CANNING COMPANY *v.* JOSEPH OTT ET AL.

[41 South. Rep., 378.]

1. APPEAL. *Law of the case. Res adjudicata. Amendment.*

   A supreme court decision in a case construing a deed and adjudging the rights of the parties under its terms as written, but remanding the cause for further proceedings, is not *res adjudicata* so as to bar an amendment of the pleadings bringing into the case for the first time an effort to reform the deed and make it effectuate the real intention of the parties.

2. EQUITY. *Contract. Reformation.*

   If a written contract expresses just what the parties intended it should express a court of equity will not reform it; but if it fail to express what the parties intended it should express it may be reformed.

FROM the chancery court of Harrison county.

HON. THADDEUS A. WOOD, Chancellor.

The Barataria Canning Company, the appellant, was complainant in the court below; Ott and others, the appellees, were defendants there. From a decree overruling the complainant's demurrer to the amended cross-bill of defendants the complainant appealed to the supreme court. The case was once before in the supreme court and is reported *Barataria Canning Company* v. *Ott,* 84 Miss., 737 (s.c., 37 South. Rep., 121).

The facts of the case are fully stated in the opinion of the court.

*D. W. Harper,* and *Harper & Harper,* for appellant.

The pleading in the case at bar denominated an amended answer and cross-bill is such in name and form only; in substance it is an original bill making a direct attack on a decree of this court for alleged errors not apparent on its face.

It is a fundamental principle that any right, any question, or any fact put in issue and directly determined by any court having jurisdiction of the subject matter of the suit and of the person, as a ground of recovery or defense, cannot be disputed in a subsequent suit between the same parties or privies. This is true if the second suit is for a different cause of action. The right, question or fact once determined, must as between the same parties and their privies be taken as conclusive and neither will be heard to speak again. *Hopkins* v. *Lee,* 19 U. S., 109; *Thompson* v. *Roberts,* 65 U. S., 233; *Johnson Company* v. *Wharton,* 152 U. S., 253; *Cromwell* v. *Sac County,* 94 U. S., 351.

In the original suit the defendants set up as a defense to the action brought against them that they were the owners of the oysters in question, and to establish this ownership, offered in evidence the deed of October 14, A. D. 1903, and, "in addition, appellees were permitted to introduce parol testimony, tending to prove that while they had no conversation or agreement with an officer of the appellant company, it was their understanding that the legal effect of said deed of October 14, 1903, was to vest in them the exclusive right to gather oysters northward and eastward of the line located by the deed, and that it was their intention in executing the deed, and the moving consideration therefor, that Barataria Canning Company was to surrender to them all its rights in the oysters planted and bedded in the oysters described and lying in front of their property." By whom was this oral testimony given? By Frederick McCaleb, one of the appellees; Joseph Ott, another one of the appellees; John Ott, still another one of the appellees. Thus the deed was put in evidence and a full opportunity was afforded the appellees to show by oral testimony any fraud, mistake or error. It was offered for adjudication, construction or modification, so as to make the deed prove, when reformed, that the title to the oysters taken was in them, and it was com-

petent for the court to so have modified the instrument if the facts had justified.

It is clear that there was a right under and by virtue of the deed of October 14, 1903, put in issue and directly determined by a court of competent jurisdiction as a ground of defense; that the finding of this court cannot be disputed in the chancery court or in any other court in any subsequent suit between these appellees and this appellant, much less in the same contro-versy. By means of this so-called amended answer and cross-bill the learned counsel would have this court to reconsider its former adjudication of right between the same parties. This is never done by way of an amended answer and cross-bill, but the only way known to the writer by which this thing can be accomplished is by a suggestion of error by proper motion in the appellate court during the term.

Of course equity may reform a deed so as to make it express the true intention of the contracting parties, when the subject matter of such a proceeding is properly presented by original bill, or in a proper case by cross-bill. These appellees attempted to make a case that would entitle them to reformation of the deed of October 14, 1903, so as to transfer the title of the oysters growing or being on the said premises, by their original cross-bill, and it seems to be a proper case in which the question might be raised by cross-bill. The question whether these appellees were entitled to reformation was put to issue and they failed to make a case that would entitle them to this relief; because in this case there was no misrepresentation on either side. The parties dealt at arm's length and the deed was placed in escrow until the acceptance and delivery. It is no argument upon either side to say what the intention of the parties was. The deed must speak for itself. It follows, therefore, that appellant is vested with the sole and exclusive ownership of all oyster beds which it has planted. Of this ownership, appellees should be required to respect.

If anything was adjudicated by the decision of this court of June 6, 1904, it seems to us as between the appellees and the appellant, the title in and to the oysters growing on the close was forever settled in favor of appellant, and beyond all future litigation. If not, the words of this court are without meaning, "that appellant is vested with the sole and exclusive ownership of all oyster beds which it has planted, and that this ownership appellees should be required to respect." This court has upon full evidence fully adjudicated the deed of October 14, 1903, and as between the parties and their privies neither will there ever be heard again.

*Ford & White,* for appellees.

*A decision of an appellate court becomes the law of the case only when the facts remain the same.*

The appellant has seized with such avidity upon the expression used by this honorable court in ordering the reversal of the decree dissolving the injunction, that the injunction be reinstated and *"made perpetual,"* insisting that this honorable court, in passing upon an appeal from a purely interlocutory order, and long in advance of any hearing upon the merits of the cause, had decided not only every question that was before it on that appeal, but has anticipated every possible defense of appellees to the original bill, and has relegated the whole controversy in every possible phase to the dead past, that we respond to that proposition first. We are told in this same case, which was remanded to the court for further proceedings, that all questions presented by this amended cross bill are *res adjudicata.* If the supreme court had the right to thus dispose of the whole case, and intended to dispose of it, we inquire: for what purpose was the cause remanded? Are decrees of chancery courts restraining the acts of parties to controversies, and enforcing the payment of costs, any more efficacious than decrees of the supreme court for the same purpose? If this

honorable court intended the decree of reversal to have the broad and blighting effects which appellant contends for, we are at a loss to know for what purpose the case was sent back to the lower court at all.

We understand by the direction that the injunction be made perpetual, that the court meant simply to do what it and all other appellate courts have done under similar circumstances— that is, to perpetuate the injunction so long as the parties asserted the same rights *upon the same state of facts* presented on that appeal.

A reversal of a judgment places the parties in the same position they occupied before its rendition.    *Harris* v. *Newman,* 5 How. (Miss.), 654.

Where an appellate court reverses decree and remands the cause to the lower court for further proceedings, that court can only carry into effect the mandate of the appellate court so far as its direction extends, but the lower court is free to make any order or direction in the further progress of the case as to any question not presented or settled by such decision.    *Cunningham* v. *Ashley,* 16 Ark., 1817 (63 Am. Dec., 62).

A decision on appeal reversing an order granting a temporary injunction is conclusive only of the right of the parties upon the showing in support of the order.    *Andrews* v. *National Foundry and Pipe Works* (C. C. A. opinion), 61 Fed. Rep., 782; Cyc., vol. 3, pp. 493 and 494; 3 Cent. Dig. Col., 2731.

*The decision of a case by the supreme court does not, where the case is remanded, take away the power to allow proper amendments.*

It is earnestly contended by appellants that the decision of this honorable court on the former appeal was such as to deprive the chancery court of the power to allow amendments; that the direction to perpetuate the writ of injunction was a mandatory order to the chancery court which it could, under no circumstances, disregard.    We beg to take issue upon this propo-

sition. As heretofore stated, so long as the case was before the chancery court on the same record, or state of pleadings, as when decided on appeal, the decision, whether right or wrong, is, of course, the law on the case. But we confidently assert that it was never the intention of this honorable court, in making the order that it did, to anticipate the action of appellees, and at once cut up by the roots every conceivable defense. Such has not been the course of courts of last resort in Mississippi, or elsewhere, so far as our investigation has extended.

In *Wailes* v. *Cooper*, 25 Miss. (3 Cush.), 421, it appears that on a prior appeal (see *Wailes* v. *Cooper*, 24 Miss. [2 Cush.], 208) that the court had decided the case adversely to one of the parties, and remanded the cause with direction to the lower court to proceed to foreclose the mortgage. It was contended on the second appeal that under the prior decision that the court of chancery had, by the judgment of the high court of errors and appeals on the prior appeal, shorn the lower court of all powers or authority, other than executing its mandate. But Mr. Justice YERGER disposed of this contention in the following language:

"By the decree remanding the cause and directing a foreclosure of the mortgage in the chancery court, we did not intend to take away the power which belongs to the chancellor, of allowing amendments in the pleadings, or to make such other orders in the case as the equity and right of the case may demand and the rules of practice in the chancery court allow. This power the chancellor now has, as fully in this case as in any other pending in that court. The only effect of our mandate is to require him, upon the state of the *pleadings and proof remaining the same as when it was decided by the high court* to render the decree directed by the mandate."

After a case has been finally heard in the chancery court and decided, and on appeal the chancellor is reversed and the cause remanded, the chancellor still has the power to allow an amend-

ment of the answer on such a showing as relieves the applicant from the imputation of laches, and convinces the chancellor that the amendment is unnecessary to the ends of justice. (*Hanserd* v. *Gray,* 46 Miss., 75. To the same effect see *Taylor* v. *Wright,* 54 Miss., 722; also *Field* v. *Banking Co.,* 77 Miss., 180; *Tishomingo Institution* v. *Allen,* 76 Miss., 130, on questions generally as to amendments.) So we respectfully insist that there is nothing in the prior decision of the court in this case that in any way restricts the authority of the chancellor to allow a proper amendment to the pleadings in order to bring the real merits of this controversy before the court.

*The relief sought by the amended cross bill, consistent with relief sought in the original cross bill.*

A different state of facts from those averred in the original bill may be set up by way of amendment, if the character of the relief sought remains the same, notwithstanding the averments in the amendment are inconsistent with the bill, provided they are not inconsistent with its purpose and relief originally sought. *Hardy* v. *Bulger,* 66 Miss., 577; *Chicago, Milwaukee & St. Paul Railway Co.* v. *Third National Bank,* 134 U. S., 276 (L. ed. B 33, p. 900; *City of Winona* v. *Minnesota Ry. Const. Co.,* 29 Minn., 68 (11 N. W. Rep., 228); 3 Cent. Dig., 2777.

WHITFIELD, C. J., delivered the opinion of the court.

The amended cross bill substantially makes this case in brief: That both parties, appellant and appellees, mutually intended by their deed and agreement that appellant should convey to appellees "all the oysters, oyster beds, and all other rights and privileges then held by said appellant in the waters of the said bay northward and eastward of the line indicated in said instrument, and forever conveyed, abandoned and released to the appellees all the property rights and privileges then held by them in that portion of said waters of said bay to the northward and eastward of said line indicated in said instrument," and

that in consideration of said agreement, and its execution on
the part of appellant, the appellees agreed to convey to the ap-
pellant, in fee simple, certain land on which its canning fac-
tory stood, to which it then held a lease originally for twenty-
five years, and that appellant agreed, in consideration of this
conveyance, to pay appellees $6,000, and "surrender forever to
appellees the right to oysters and oyster beds held by it in the
waters of the bay of Biloxi, to the northward and eastward of
said line indicated in the said agreement," and that but for
this understanding as to the contract actually made between
the parties the appellees would never have consented to have
parted with what they did part with for the sum of $6,000.
The appellees in the cross bill expressly allege that the follow-
ing paragraph in the agreement below set out, together with the
other recitals and stipulations of the said instrument, had the
effect to convey "to them all the oysters, oyster beds, property
rights, and privileges then held by said appellant in the waters
of the said bay of Biloxi to the northward and eastward of said
line indicated in said instrument," and that appellees accepted
the said $6,000 and executed said instrument under that belief.
The said paragraph is as follows:

"And it is expressly understood that the said Barataria Can-
ning Company, by its acceptance of the grant evidenced by this
instrument, shall for itself, its legal representatives, and its
successors in interest, disclaim any right of claim to the exer-
cise of any littoral and aquatic rights and privileges, appurte-
nant and attached to said land, or vested in the grantors as the
owners of said land, to the northward and eastward of said line
so established, no matter what the actual conformation of the
shore line may or shall be, or become or be made, and the re-
spective concessions and disclaimer here made by the parties
hereto, each in favor of the other, shall be held and understood
as reciprocal, and as furnishing mutual consideration each for
the other."

This court held in the former opinion that "littoral and aqua-
tic rights" are simply those rights which, "in default of special
statutory provisions to the contrary, pertain to the lands abut-
ting upon tide waters to which the common-law doctrine of rip-
arian ownership does not apply." And in another part of the
opinion they were defined to be "the privilege of landing his
boats, hauling his nets, gathering of seaweeds and shells, and
taking sand from the beach between the high and low water
marks, and in some jurisdictions the right to erect wharfs and
piers and bath houses in the water in front of his property."
It is obvious that, if this is all that was meant by "littoral and
aquatic rights," the appellees fail wholly to get what they in-
tended to get as to the right to oyster plantations, etc., in the
waters northward and eastward of the line indicated in the
agreement, if the allegations of the cross bill are true. In fact,
it is obvious that "littoral and aquatic rights," within this defi-
nition, amounted to nothing; were absolutely valueless so far
as the right to set out and use oysters in the part of the waters
of the bay indicated was concerned. The prayer of the cross
bill was in the alternative: First, that the instrument of writ-
ing, marked "Exhibit No. 2" to the amended answer and cross
bill, may be reformed so as to embrace and set forth, in proper
and apt language, the real intent and purpose of the agreement
between the appellant and appellees, etc., and for an accounting
to be taken of all oysters removed, etc., and for a decree for
their value, and for an injunction against the appellant restrain-
ing it from removing any oysters, and interfering with appel-
lees, etc., or, if the court on final hearing should hold the said
agreement void for want of mutuality, then that the court should
decree the appellant entitled to receive back the $6,000 so paid
by appellant to appellees as aforesaid, and which $6,000 the
appellees had tendered to appellant, and that said instrument,
Exhibit No. 2, should be concelled and held for naught, etc.,
and that the rents under the original lease from said Mary Ott

to appellant should be decreed to be paid appellees as though such instrument had never been executed, and that the injunction heretofore granted against appellees should be dissolved, etc. There was a demurrer to this amended answer and cross bill, which was by the court overruled, and this cause is here on appeal from that action of the chancellor.

The contention of appellant that the former decision of this court is *res adjudicata* of the present contention presented by this amended answer and cross bill is a clear misconception of the case made by said answer and cross bill. All that was done by this court, in its former opinion, was to declare the rights of the respective parties to the instrument according to the terms of the instrument as interpreted by the court. The object of appellees in the present pleading is in no way to assail the correctness of that decision; but, accepting it—accepting the interpretation put upon the terms of said agreement, especially the phrase "littoral and aquatic rights"—the said cross-bill avers that the instrument did not correctly set out, so interpreted, the contract actually made between the parties; that one contract was actually entered into between the parties—the one insisted on by appellee—but that through the use of inapt words that contract so actually made was not contained in or expressed by said instrument, and prays simply the reformation of the instrument to make it speak the contract actually entered into by said parties, or alternatively as stated. It was perfectly competent for the court below to permit the amendment of the answer and cross bill. *City of Winona* v. *Minnesota,* 29 Minn., 68 (11 N. W. Rep., 1128). This case falls clearly within the principles set out in the following authorities: "If an agreement is what it was intended to be, equity would not interfere with it because the parties had mistaken its legal import and effect. If, on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, by means of a mistake of law, fails to express the contract

which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of the contract actually made, but the mistake of law prevents the real contract from being embodied in the written instrument. In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing." 2 Pomeroy on Equity Jurisprudence, sec. 845. "In entering into contracts, parties are deemed to know the principles established by law, and contracts are construed with reference to the law applicable to the subject-matter of the contract, and in that sense the law as it actually is enters into and forms part of the contract that the parties make. If, however, in a given case, the parties actually mistake or misunderstand the principle of law applicable to the subject-matter of the contract, and reach an agreement relying upon this mistake of the law, there is no ground upon which a court of equity can reform the contract. The court cannot know whether the parties, if they had correctly understood the law, would have entered into any contract on the subject, or what terms they might have reached touching the same. While the court might, therefore, be entirely satisfied that the parties, had they in fact correctly understood the principles of law applicable to the case, would not have made the contract they did make, the court cannot know what contract they would have made, if any, and therefore in such case the court cannot reform the contract, although it might be justified in setting it aside. When, however, the mistake lies, not in misunderstanding of the principles of the

law controlling the subject of the contract or the rights of the parties connected therewith, but merely in the terms proper to be used in defining the actual contract of the parties, such a mistake, though in one sense a mistake of law, is one that a court of equity will correct." *Abraham* v. *North German Ins. Co.* (C. C.), 40 Fed. Rep., 717. "A husband and wife agreed to purchase land, each to pay one-half of the purchase money, and to hold the land as tenants in common. The husband drew the deed, but by misunderstanding as to the effect of the language employed, the deed created an estate by entireties. Held, that the deed would be reformed. *Brown* v. *Brown,* 79 Hun., 44 (29 N. Y. Supp., 652); 42 Am. Dig. (Cent. ed.), col. 1093, par. p. Where the parties to a deed intend that a fee simple should be conveyed, but the word heirs was omitted, so that only a life estate was conveyed, reformation will be decreed, though the omission arose from a mistake of law. *Brock* v. *O'Dell,* 44 S. C., 22 (21 S. E. Rep., 976); 42 Am. Dig. (Cent. ed.), col. 1093, par. 'r.' "

Clearly, here the averments of the cross-bill give a case in which there was not a mistake as to the legal import of the contract actually made, but the mistake was in using words which absolutely prevented the real contract from being made at all, or, as Pomeroy so clearly puts it, "the instrument as written fails to express the intention which the parties had in making the contract which it purports to contain," and hence falls precisely within the class which equity will reform. No better statement of the principle has ever been made than that made by Judge CAMPBELL, for this court, in *Hall* v. *Lafayette,* 69 Miss., 540 (13 South. Rep., 39), when he said: "If an agreement is just what the parties intended it should be, no matter what led to it, there can be no interference with it; but if in putting it into form it fails to express and stipulate for what the parties understood and intended it should, a case is made for a court of chancery." But, besides this, this amended

answer and cross-bill alleged facts as to the action of appellant in inducing appellees to believe that their title to the oysters and oyster beds would not be questioned if they accepted and executed the deed as drawn, which, if true, make out a case of actual fraud, and it is expressly held that this would have entitled appellees to the relief sought by the cross-bill. Pomeroy perhaps the greatest of all equity writers, says: "Whatever be the effect of a mistake pure and simple, there is no doubt that equitable relief, affirmative or defensive, will be granted when the ignorance or misapprehension of a party concerning the legal effect of a transaction in which he engages, or concerning his own legal rights which are to be affected, is induced, produced, aided, or accompanied by inequitable conduct of the other parties. It is not necessary that such inequitable conduct should be intentionally misleading, much less that it should be actual fraud. It is enough that the misconception of the law was the result of, or even aided or accompanied by incorrect or misleading statements, or acts of the other party." 2 Pomeroy on Equity, sec. 847.

We are clearly of the opinion that the former judgment of this court constitutes no bar to the granting of the relief sought by the cross-bill in this cause, and that the demurrer was, therefore, properly overruled. What the court held before is the law of the case within the limits of that holding, and the court held nothing absolutely as to whether, granting this instrument to mean what the court construed it to mean, it might not, so construed, wholly fail to convey and contain the contract actually entered into by the parties. The cross-bill does not question the previous holding in any respect. Recognizing its full extent and force, it merely avers, accepting its construction of the contract, that no such contract was ever actually made, and asks the court to reform the instrument so as to make it speak the very contract mutually intended to be made, and, in fact, actually made, by the parties. If the appellees shall maintain

their contention, that both parties mutually intended to make and actually did make the contract they contend for, but that this instrument does not set it out, then clearly the instrument should be reformed as prayed for. But this is a matter to be developed on the testimony.

*The decree is affirmed, and the cause remanded, with leave to answer within thirty days from the filing of mandate in the court below.*