299 So.2d 198 (1974)
Eugene HAYNES
v.
AVCO SECURITY CORPORATION and Parish Contractors, Inc., et al.
No. 47591.
Supreme Court of Mississippi.
August 19, 1974.
*199 Singley & Morgan, Columbia, for appellant.
Fox & Gowan, David K. McGowan, Jackson, for appellees.
INZER, Justice:
This is an appeal by Eugene Haynes from a decree of the Chancery Court of Jefferson Davis County dismissing his bill of complaint to cancel a deed of trust held by appellee Avco Security Corporation as a cloud on his title. We reverse and render.
Appellant instituted this action against Avco Security Corporation, Parish Contractors, Inc., William L. Waller, Trustee, Jerry Corley and Eugene Lewis seeking to cancel a deed of trust as a cloud on his title. The bill of complaint alleged that appellant did not sign the deed of trust, did not authorize anyone else to sign it for him and it was a forgery.
Only Avco Security Corporation and William L. Waller, Trustee, answered the bill of complaint. The answer denied that the deed of trust was a forgery, and as an affirmative defense the answering defendants alleged (1) that it was a holder in due course of a negotiable instrument being a deed of trust, (2) Avco had no knowledge of any irregularities concerning the execution and delivery of said instrument and the promissory note which is secured by the deed of trust, and (3) that the complainant in fact made payments under the terms of the note and deed of trust for a period of months and thereby accepted and ratified said instruments.
By permission of the court complainant was allowed to file an answer to the affirmative defense without the necessity of amending the bill of complaint. The answer denied both the affirmative defenses.
The deed of trust in question shows on its face that it was executed to secure a promissory note in favor of Parish Contractors, Inc. of New Orleans, Louisiana, in the amount of $3,780. It was purported to have been signed on April 21, 1969, by Eugene Haynes making his mark. It was also purported to be signed by Bernice Bethea. The mark was witnessed by Jerry Corley and Eugene Lewis. It was not acknowledged by the persons alleged to have signed it, but does contain a witness acknowledgment. The acknowledgment was by a notary public in Hinds County, and it stated that Jerry Corley one of the subscribing witnesses, personally appeared before the notary and swore that he saw Eugene Haynes and Bernice Bethea, Haynes' daughter, sign and deliver the deed of trust to Parish Contractors. This acknowledgment was dated May 1, 1969, and contains the seal of the notary. The deed of trust shows that it was assigned for value on May 23, 1969, to Avco Security Corporation by Parish Contractors, Inc. It was filed for record in the office of the Chancery Clerk of Jefferson Davis County on June 10, 1969.
Appellant, a 74-year-old uneducated black man with impaired hearing, is the owner of a tract of land in the village of Carson in Jefferson Davis County. Located on the land is an old house in which appellant has lived for many years. His wife died many years ago and his niece Bernice Bethea lives in this house with him, but owns no interest in the property. According to the testimony of appellant, in April 1969 two white men came to his home and said they were boing to repair his house. These men identified themselves as being Jerry Corley and Eugene Lewis, but appellant had never seen them before this occasion. They told him they were going to jack up the house, put in windows, put on siding and install a bathroom. Appellant admits that he agreed to let them do the work, but testified that he did not sign any papers. He said that there was no mention made of a deed of trust, and he specifically denied that he signed or authorized anyone to sign a deed of trust for him. He said the first time he had any knowledge that he was supposed to have signed a deed of trust was more than a year later when the chancery clerk showed him a deed of trust *200 that had been recorded. He looked at the deed of trust and saw that it had been signed by a cross mark. Appellant testified that although he could barely read or write, he could sign his name and never signed by mark. In support of this testimony he offered in evidence several deeds of trust that he had executed in the past and paid off showing his name signed thereto which he said he had signed. Each of these deeds of trust was acknowledged by Eugene Haynes and the acknowledgment stated that Eugene Haynes had personally appeared before the notary and acknowledged that he had signed each of the deeds of trust. He also signed his name on a blank piece of paper to illustrate that he could sign his name. From these exhibits there is no doubt that appellant could write his name, although not too legibly. Appellant also testified that he had never again seen the two men who first came by his house. A few days later some workmen came and put siding on the house, but the other work has never been done. He admitted that he signed a piece of paper which the man told him was to show that he was satisfied with the work that had been done. He also admitted that he did make payments as required for about a year. He said he stopped making payments because he thought he had paid for the work actually done.
Bernice Bethea, who is a niece of Haynes and lives within him, testified that she was at home when the two men came to the house and said they were going to put siding around the house, jack it up, put in a bathroom and fix the windows. She admitted that she signed the deed of trust in question, but testified that when she signed it, Eugene Haynes' mark was not on the deed of trust and that her uncle never signed or authorized anyone to sign his name to the deed of trust. She said the men never came back to the house again and she had not seen them since. On cross examination she denied that she had ever signed the note or knew anything about a completion certificate. She said her uncle had made payments for about a year after the siding was put on the house.
The only witness called by the appellee was George Brown, who at the time of the trial was the manager of the Jackson office of appellee and was in charge of the records. It developed that Brown became manager of the Jackson office in March 1972 and knew nothing about the transaction in question except what was shown in the file in that office. He said he found a recording of a telephone conversation between an unidentified, unknown employee and someone purported to be Haynes. Over the objection of appellant the recording was received into evidence without any showing of its authenticity, genuineness, correctness or that the recording had not been altered. Although this recording was admitted into evidence and heard by the trial judge, it was not transcribed as a part of the record on appeal.
Neither of the witnesses who allegedly witnessed Haynes' signing the deed of trust by his mark was produced to testify. After the defendants rested the chancellor entered a decree dismissing the bill of complaint without stating his reason for doing so. The principal contention of appellant is that the trial court was in error in admitting into evidence the tape recording of a purported telephone conversation between appellant and an unidentified person and absent this evidence there is nothing in the record to contradict the testimony offered on behalf of the appellant. Appellant urges that there is a complete lack of clarity in the recording, and there is no evidence as to when the tape was made, who made it, who the parties to the conversation were or whether it had been altered. Appellee urges that the dictabelt was correctly admitted in evidence for the purpose of showing that appellant admitted that he signed the deed of trust and in contradiction of his sworn testimony.
Appellant denied that he ever had a telephone conversation relative to the deed of trust, and after the tape was played in his *201 presence he said he was unable to hear or understand anything on the tape. He said he did not recognize the voice on the tape as being his voice.
Appellee's witness Brown testified on the day before the trial he removed the dictabelt from the file and made a cassette tape recording of the conversation that was on the dictabelt. On cross examination Brown stated that he did not participate in the conversation nor was he present when it was made. The first time he saw the dictabelt was in March 1972 and did not know what was on it until the day before the trial.
This Court was first confronted by the question of the admissibility of a tape recording in Ray v. State, 213 Miss. 650, 57 So.2d 469 (1952). This case involved whether a tape recorded confession was admissible in evidence. We held that before a tape recording could be admitted in evidence the genuineness or authenticity of the recording must be established. The party offering the recording must make a showing with reference to its preparation and manner of preservation. There should also be a showing that no changes have been made, whether deletions, additions or otherwise.
In Carr v. State, 218 So.2d 737 (Miss. 1969), we pointed out that because of the facility with which tape recordings may be edited, parts erased or deleted and portions rerecorded, the rule is that before a tape can be introduced in evidence, preliminary proof of its authenticity is required. It is obvious in the case before us appellee wholly failed to establish the authenticity and accuracy of the recording, and the trial court was in error in admitting the dictabelt in evidence.
It is the contention of the appellant that if the tape recording is excluded, his corroborated testimony that he did not sign the deed of trust, and did not authorize anyone else to sign it stands uncontradicted. Therefore, he was entitled to a decree cancelling the deed of trust as a cloud on his title. On the other hand appellee urges that even though the tape recording was not admissible in evidence, the decree of the trial court should be affirmed. It is argued that it was a holder in due course of the note and deed of trust and had a right to rely on the presumption that the signatures were valid. It also urges that appellant admitted that he made payments for about a year in accordance with the deed of trust. Thus it concludes that we should not overturn the decree of the chancellor. Insofar as the appellee being a holder in due course, it failed to produce any witness who had any personal knowledge of the transaction with Parish Contractors, Inc. The assignment of Parish indicated that it was made for value, the nature and amount of which is not stated. It did not establish that the instrument was acquired in good faith without notice of any defense or claim. However, we do not think that the Uniform Commercial Code is applicable in this case. This is a suit to cancel the deed of trust only and the burden of proof was upon the appellant to prove that he did not execute the deed of trust. Since it was alleged that the deed of trust was fraudulently executed or forged, appellant had the burden of so showing by clear and convincing evidence. Thomas v. B. Rosenberg & Sons, Inc., 153 Miss. 314, 120 So. 732 (1929).
We find no merit in appellee's argument that the fact that appellant made several payments is evidence that he executed the deed of trust. Appellant admitted that he told the men to go ahead with the work and the fact that he made several payments on the work done is not inconsistent with this agreement, but it does not amount to evidence that he executed the deed of trust in question. This same argument was made in Securities Investment Co. v. Williams, 193 So.2d 719 (Miss. 1967). The facts and circumstances of that case are somewhat similar to the facts of this case. There in rejecting the contention we stated:
It is urged by Securities Investment Company that this, and the admitted payment of several of the monthly installments *202 before they finally refused to go further with the matter, show that appellees had, in fact, executed the note and trust deed. The making of these payments, identical with those provided for in the construction contract, which appellees admitted signing, was in no way inconsistent with the position that they were made under the contract, nor does it amount to evidence that they executed the note or trust deed. Appellees knew nothing of finance or business, were wholly without independent advice or counsel, and were completely uneducated. There is no rational basis to assume, from the fact that some payments were made on the "account," that this indicated that they understood that there was a note and trust deed. (193 So.2d at 721).
The corroborated testimony of appellant that he did not sign the deed of trust stands at this point uncontradicted. There are some inconsistencies in his testimony, but these may be explained by his age and the impairment of his hearing. The fact that the witnesses to his alleged mark were not produced and no explanation was made why they were not produced lend weight to appellant's testimony. It is also strange that if appellant signed the deed of trust, he was not required to acknowledge it before a notary or some other official in his home county where he was known. Under the record made in this case, appellant was entitled to a decree cancelling the deed of trust as a cloud on his title.
For the reasons stated, the decree dismissing the bill of complaint is reversed, and judgment will be entered here cancelling the deed of trust as a cloud on appellant's title to the land described in the bill of complaint.
Reversed and rendered.
RODGERS, P.J., and PATTERSON, SUGG and WALKER, JJ., concur.