Marsha Duncan Harrell appeals from a judgment of the Chancery Court of Lauderdale County, in favor of her ex-husband, William Duncan, for $3440.00. The judgment was for overpayment of child support for the couple's daughter, Delita. Marsha alleges that the chancery court erroneously restricted the issues to be considered in determining whether a judgment was due either party. We agree, and reverse and remand.
 I.
William Duncan and Marsha Duncan Harrell were divorced in 1981. Their marriage had produced two children: Delita, born October 9, 1965, and Rhonda, born October 12, 1969. Pursuant to the final decree of divorce, William was ordered to pay to Marsha $700.00 per month for child support and alimony. The portion of the award going to each type of support was not specified. Marsha also received exclusive use and possession of the family home, with William to make all house payments. The amount of the house payment was not specified in the final decree, but it appears to have been $225.00 per month.
Marsha remarried in March of 1986. She purchased the family home from William in August 1986, relieving him of the $225.00 monthly payment. William continued to make the $700.00 monthly payment until November 1, 1987.
In January 1988, William filed a motion to modify the terms of the final divorce decree. He asked for a reduction in the child support and for a judgment in the amount of any alimony he had paid to Marsha after her remarriage. The lower court found that the $700.00 monthly payment, after March of 1986, the date of *Page 2 
Marsha's remarriage, consisted entirely of child support. William had never tried to designate any of the $700.00 payment as alimony on his tax returns. By that time Delita was twenty-two years old and a fifth-year college student. Rhonda was an eighteen year old college student. The court found that Delita was not emancipated, and fixed her support at $200.00 per month. The court also found that Rhonda was not emancipated and fixed her support at $300.00 per month.
William appealed to this Court. See Duncan v. Duncan,556 So.2d 346 (Miss. 1990). This Court affirmed the trial court's treatment of the $700.00 monthly payment as child support. It further found that the trial court had erred in ordering William to support Delita past the age of twenty-one. The support of Rhonda at the rate of $300.00 per month was affirmed. The opinion concluded with the sentence: "In accordance with the foregoing, this case is reversed and remanded for such further proceedings and judgment as may be required and as may be consistent with this opinion." Duncan, 556 So.2d at 348.
Duncan was decided by this Court on January 17, 1990. On January 24, the lower court issued an order apparently on its own motion, stating that the litigants should file their respective pleadings so that the chancery court might consider the "further proceedings and judgment" as ordered by this Court.
On February 12, 1990, William Duncan filed his Motion for Further Proceedings and for Judgment. He sought the following as relief: (1) child support from October 10, 1986 to October 31, 1986, prorated as between what was due for Delita and what was due for Rhonda; (2) child support of not less than $200.00 per month from November 1, 1986 to May 1, 1989; (3) reimbursement of $600.00 or the prorate amount as contained in the judgment of January 1988; (4) interest on these payments; (5) accrued costs for the motion and for the successful appeal by William; (6) reasonable attorney's fees and costs of the pending motion.
Marsha Harrell filed her response to the Supreme Court's opinion on February 9. She alleged that after William had filed his notice of appeal from the chancery court's decision to this Court, he was informed by his accountant that he could have treated his support payments as alimony for tax purposes. Harrell further alleged that Duncan had filed amended tax returns for the years 1984, 1985, 1986 and 1987. She alleged that this decision by Duncan forced her to file amended returns for the years 1984, 1985 and 1986, and subsequently resulted in a payment to the IRS of $4,140.78 in taxes, interest, and penalties, and a payment of $689.00 to the Mississippi State Tax Commission. Harrell argued that it was unfair to have the Mississippi Supreme Court adjudicate these support payments as child support, and then have Duncan subsequently claim them as alimony for tax purposes. Harrell asked that Duncan be ordered to pay to her $18,200.00 in back child support, or in the alternative to pay the tax liability, $4,829.78, which he had forced her to incur.
William Duncan responded with a motion to strike the response of Marsha Harrell. He alleged that the only matters which could be taken up were those that were remanded to the chancery court from the Supreme Court, and Marsha's response was an attempt to raise new matters through improper pleadings.
William Duncan's motion to strike was heard on March 26, 1990. Duncan introduced a copy of Duncan v. Duncan, the Supreme Court mandate following the decision, the chancery court's order of January 24, 1990, and a copy of Marsha Harrell's response. The chancery court then allowed argument on the motion. The lower court found that the hearing on remand was restricted by this Court's mandate, that the issues Marsha Harrell was attempting to raise were beyond that mandate, and would have to be raised, if at all, in a separate proceeding. It granted the motion to strike.
A hearing on William Duncan's motion for further proceedings was held on April 3, 1990. The parties stipulated that Duncan *Page 3 
had paid child support of $200.00 per month from February 1, 1988 through May of 1989, and that he also paid $600.00 as ordered by the court in the final judgment of February 1988. William Duncan was called as a witness. Duncan's testimony mirrored his request for relief in his motion.
The chancery court found that Marsha Harrell should pay to William Duncan the sum of $3440.00. This judgment represented child support paid for Delita Duncan from February 1987 through May 1988 ($200.00 per month for sixteen months or $3200.00) plus 40% (Delita's share) of a $600.00 payment ordered by the court for support not paid in the fall of 1986 ($240.00). The judgment was to bear interest at 8% from January 17, 1990. The request for attorney's fees was denied.
 II.
Marsha Harrell argues that the trial court erred when it struck her response, an attempt to raise William Duncan's tax practices as an issue in the case. The trial court apparently felt that it was restricted by this Court's mandate to the issues litigated inDuncan v. Duncan.
This Court, in Haines v. Haines, 98 Miss. 830, 54 So. 433 (1910), reversed and remanded, "for decree in accordance with the opinion of this Court." On return to the chancery court, there was an attempt to amend by the plaintiff/appellee to present an entirely new and additional basis for their claim. The defendant/appellant objected, saying that any issues outside the original pleadings were res judicata and barred. This Court reversed, finding:
 When a judgment or decree appealed from is by this court reversed and remanded to the trial court, such court has full power to allow any amendment to be made to the pleadings which it had power to allow before the judgment or decree appealed from was rendered. The remanding of a case to the trial court is for the purpose of having it tried de novo, and such a court has the same power to allow amendments to the pleadings when a cause is remanded with direction to enter a judgment or decree in accordance with the opinion of this court that it has when a cause is remanded without any such direction. If on the trial in the court below the pleadings and proof present the same case that was before this court on the appeal, the judgment or decree of the court should be in accordance with the directions given it by this court; but, should the pleadings and proof then present a different case, the judgment or decree should be made to conform thereto. Wailes v. Cooper, 25 Miss. 421; Hanserd v. Gray, 46 Miss. 75; Taylor v. Wright, 54 Miss. 722; Canning Co. v. Ott, 88 Miss. 771, 41 So. 378.
 The former judgment of this court is res judicata of the case as then presented; but the new matter contained in the amended bill, not being before the court, was not embraced in the judgment then rendered. Canning Company v. Ott, 88 Miss. 771, 41 So. 378.
Haines, 98 Miss. at 839, 54 So. at 433-34; see also Middletonv. Davis, 105 Miss. 152, 62 So. 164 (1913) (citing Haines);Seals v. St. Regis Paper Co., 236 So.2d 388 (Miss. 1970) (plaintiff allowed on remand to amend pleadings to charge newly discovered evidence and ask for punitive damages). Suffice it to say in the case sub judice, we have a new matter not before the Court in Duncan I.
Closely related to the preceding argument is the doctrine of "the law of the case." In Continental Turpentine Rosin Co. v.Gulf Naval Stores Co., 244 Miss. 465, 142 So.2d 200 (1962), Gulf Naval, an export partnership, filed suit to be allowed to leave the Wood Naval Stores Export Association. The case eventually reached this Court, which made certain rulings concerning a fine imposed by the Association on Gulf Naval, labelling the fine "liquidated damages." The case was then settled. Subsequently, the Association filed suit against Gulf Naval. Gulf Naval attempted to assert that this Court's ruling, as to the fine as being liquidated damages, was part of the law of the case, and could *Page 4 
not be re-litigated. This Court differed, stating:
 The opinion of this Court in the first case was correct under the facts as shown by the evidence introduced in that trial. Moreover, it was a separate and distinct action from the present case. If, however, the first case were a branch of the present action, as is contended by appellants, the Supreme Court would not be bound by the opinion rendered on the first appeal, because, where the evidence on the second trial is materially different on essential elements, the decision on the first appeal will not be taken as the "law of the case."
Continental Turpentine, 244 Miss. at 481, 142 So.2d at 207;see generally Simpson v. State Farm Fire and Casualty Co.,564 So.2d 1374 (Miss. 1990).
William Duncan argues that the chancellor may, in his discretion, strike Marsha's response and that the chancellor properly struck the response. We find that the chancellor abused his discretion by being unduly restrictive in disallowing the matter that had not been a part of the original case and certainly had not been resolved by Duncan I. Indeed, we have new occurrences pled after Duncan I.[1]
In Seals v. St. Regis Paper Co., 236 So.2d 388 (Miss. 1970), a minor was struck and injured by a car. The issue of punitive damages was presented at trial, considered by the jury and a general verdict returned in the amount of $25,000.00. This Court reversed and remanded, see St. Regis Paper Co. v. Seals,211 So.2d 547 (Miss. 1968), saying that this was not a proper case for punitive damages. On remand, Seals amended his pleadings to charge newly discovered evidence and to again seek punitive damages. This Court affirmed the trial court's allowance of the amendment to the pleadings citing Haines. The amendment was sought partially on the basis of evidence or facts not in existence at the time of the first trial.
We find it desirable, as permitted in Haines, to hear all issues not decided by the first trial and find that matters not before the first court and "not embraced in the judgment then rendered" are de novo before the Court. When remanded it is remanded to consider all issues not previously decided and by amendment any new issues relevant may be considered. Haines, 98 Miss. at 839, 54 So. at 434.
It may be that Marsha Harrell's best course of action would have been to appeal the tax penalties against her. Because she does not seek to alter what the IRS has done, she only asks to have that action taken into consideration in Duncan's action against her. The chancery court erred in not allowing her to bring this action before the Court. The facts and evidence have changed since this Court rendered its decision in Duncan I.
Further, William Duncan's treatment of his support payment has changed and may be inconsistent with his previous position before this State's courts. Therefore, this Court's mandate does not prohibit the chancery court from at least considering what effect, if any, this new evidence might have.
 III.
Though we reverse because of the undue restriction of issues at the hearing, another matter which may arise on remand bears some discussion. The matter is the privilege against self-incrimination.
William Duncan was the sole witness during the hearing on further proceedings. When opposing counsel attempted to cross-examine him about his tax returns, counsel for Duncan objected, saying that matter was beyond the scope of the hearing. The objection was sustained. A letter from Duncan's C.P.A. was marked for identification. The following exchange then occurred:
 MR. SCARBOROUGH: Your Honor, I'd like the opportunity to make a record and ask Mr. Duncan a few more questions regarding these tax returns.
 THE COURT: The request is granted. Please notify the Court when you have concluded the offer of evidence.
 MR. SCARBOROUGH: Thank you. *Page 5 
 Q. Mr. Duncan, did you file amended tax returns for the years 1984, 1985, and 1986 subsequent to the February 1988 judgment of this Court (handing document to witness)?
 A. Yes, sir, I believe it was.
 Q. Was this done at your request?
 A. Well, I give the "okay."
 Q. Who brought this to your attention?
 A. I — I believe it was Mr. McDonald at first.
 Q. This substantially reduced your taxable income for these years, did it not?
 A. Yes, sir.
 Q. And in fact, according to Mr. McDonald, it reduces your taxable income by seven thousand four hundred dollars ($7,400) for the first two years, doesn't it?
 A. I suppose. I'm not for sure about it.
 Q. Would you please read the last paragraph here.
 MR. JONES: Excuse me, Your Honor. We object to him having to read it. The document's already marked for the purposes of the record.
 THE COURT: Argument on the objection.
 MR. SCARBOROUGH: I have none.
 THE COURT: The objection is sustained.
 Q. You received your refund from the Internal Revenue Service for this, didn't you?
 A. Yes, sir.
 Q. Do you recall the amount of that refund?
 MR. JONES: Your Honor, may I advise the client he may have a right to object to these under the Fifth Amendment and on the basis that if they are charging or contending that he has in any way made a fraudulent return that he may rely on his Fifth Amendment right not to testify at this time?
 THE COURT: Any argument on the objection?
 MR. SCARBOROUGH: It appears to me that we're in the middle of a civil case, Your Honor, and I'd ask that he answer the question.
 THE COURT: The objection is sustained.
 MR. SCARBOROUGH: By sustaining the objection the, I cannot ask the amount of the refund that he received; is that correct?
 THE COURT: Yes, sir.
 MR. SCARBOROUGH: That's all on our offer.
We note that the questions prohibited seem to go to a document already a matter of record. However, persons in this State do enjoy a privilege against self-incrimination through the Fifth Amendment to the United States Constitution, and Article 3, § 26 of the Mississippi Constitution. We provided, in In re Knapp,536 So.2d 1330, 1334 (Miss. 1988), the following:
 Both federal and state varieties of the privilege against self-incrimination are available to witnesses in proceedings civil as well as criminal. Allen v. Illinois, 478 U.S. 364, 368, 106 S.Ct. 2988, 2991, 92 L.Ed.2d 296, 303-04 (1986); Lefkowitz v. Cunningham, 431 U.S. 801, 804-05, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1, 6-7 (1977); Mississippi State Bar v. Attorney L, 511 So.2d 119 (Miss. 1987); Morgan v. United States Fidelity Guaranty Co., 222 So.2d 820 (Miss. 1969).
 . . . .
 In a criminal prosecution the privilege provides that an individual may not be required to take the witness stand at all. Mississippi State Bar v. Attorney L, 511 So.2d at 123; Morgan v. United States Fidelity Guaranty Co., 222 So.2d at 828. But this is because of the practical reality of juror prejudice and misunderstanding should the individual have to invoke his privilege on a question by question basis. Experience and common sense have taught that the only way the privilege may in fact be secured in a criminal prosecution is that the accused have the right, if he wishes to exercise it, not to take the witness stand at all. Such considerations have no application in civil proceedings, particularly where, as here, a party is merely being required to submit to deposition. Here we do proceed on a question by question basis.
"[T]he claim of privilege in a civil case is to be determined by the court and not by *Page 6 
the witness as in a criminal case." Morgan v. United StatesFidelity Guaranty Co., 222 So.2d 820, 828 (Miss. 1969). When a witness desires to claim the privilege of the Fifth Amendment, "[h]e is required to give the court sufficient information for the court to determine, in fact, that answering the question would tend to incriminate the witness." Hinds County Board ofSupervisors v. Common Cause, 551 So.2d 107, 112 (Miss. 1989). The privilege against self-incrimination may be waived when the witness in question takes the stand and testifies as to the merits of the case. He cannot then, on cross-examination, attempt to avoid further questions on the merits of the case by use of the privilege. Moore v. Moore, 558 So.2d 834 (Miss. 1990);Wallace v. Jones, 572 So.2d 371 (Miss. 1990).
We express no opinion as to whether William Duncan might properly invoke his privilege against self-incrimination in any future proceeding. The record is too sparse for such a determination. Indeed, based on the previously cited testimony, we seriously question whether Duncan invoked the privilege at all. If the matter of privilege comes up again, the procedure to be followed is clear. The claim of privilege, applicable in a civil case, is to be determined by the court. The privilege, if claimed, must be done so on a question by question basis. The witness must tender sufficient information so that the court can make an informed decision. Though we do not say that an attorney may not represent his client in matters of privilege, we do require that the witness make some affirmative indication that he himself invokes the privilege. See Brown v. State, 108 Miss. 46, 66 So. 288 (1914); Musselwhite v. State, 212 Miss. 526,54 So.2d 911 (1951).
 IV.
We provide the following guidelines on remand. It appears that the lower court, on remand from our original opinion in Duncanv. Duncan, was somewhat confused, particularly by the direction that the case be "reversed and remanded for such further proceedings and judgment as may be required and as may be consistent with this opinion." (emphasis added) There was no intention to instruct or require the chancery court in how to carry this matter to judgment. Certainly this Court did not intend to imply any monetary judgment against either party hereto. We recognize that the issue of child support for Delita Duncan, paid after she reached the age of majority, certainly may be raised on remand. It should be noted that "[c]hild support is awarded to the custodial parent for the benefit and protection of the child. Child support benefits belong to the child, and not the parent who, having custody, receives such benefits under a fiduciary duty to hold and use them for the benefit of the child." Cumberland v. Cumberland, 564 So.2d 839, 847 (Miss. 1990). Mrs. Harrell received the child support payments as fiduciary for the benefit of Delita Duncan. There is no suggestion in the record before this Court that she used any portion of the payments for any purpose other than the proper one. Mrs. Harrell is not liable to William Duncan for any amount, absent sufficient and credible proof that she used some portion of the child support for her own benefit. Duncan's proper remedy is either to claim against his daughter Delita or to prove that Mrs. Harrell used or benefitted from the funds. William Duncan, commendably has continued to help his offspring but the mere fact that Duncan overpaid his child support by $3440.00 is by no means conclusive proof that Mrs. Harrell is liable to him for that amount.
It was established in Duncan v. Duncan that the $700.00 monthly payments, after Marsha Harrell's remarriage, were entirely child support. If the matter of taxes is raised at all on remand, it may be helpful for the chancery court to determine what portion of the $700.00 was child support and what portion was alimony, if any, from the time of the divorce of William Duncan and Marsha Harrell to the time of Harrell's remarriage. Though not determinative for tax purposes, such a finding may be significant in any future proceedings involving taxes. White v.United States, 550 F. Supp. 96 (M.D.Ala. 1982).
REVERSED AND REMANDED. *Page 7 
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN and BANKS, JJ., concur.
McRAE, J., concurs in part and dissents in part by separate written opinion joined by DAN M. LEE, P.J.
[1] See M.R.C.P 15.