STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1509


WILTON C. PORTALIS, JR.

VERSUS

OUR LADY OF LOURDES
REGIONAL MEDICAL CENTER, INC.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRCT 4
PARISH OF LAFAYETTE, NO. 06-05185
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

MICHAEL G. SULLIVAN
JUDGE

**********

Court composed of John D. Saunders, Michael G. Sullivan, and James T. Genovese,
Judges.


Saunders, J., agrees in part, dissents in part, and assigns written reasons.

AFFIRMED.


Philip E. Roberts
Leake & Anderson, LLP
Post Office Drawer Z
Lafayette, Louisiana  70502
(337) 233-7430
Counsel for Defendant/Appellant:
        Our Lady of Lourdes Regional Medical Center, Inc.

**Janice H. Barber**
**Attorney at Law**
**Post Office Drawer 1909**
**Sulphur, Louisiana  70664**
**(337) 625-4447**
**Counsel for Plaintiff/Appellee:**
**Wilton C. Portalis, Jr.**

**SULLIVAN, Judge.**

In this workers' compensation case, the employer appeals the award of benefits to the employee, and the employee appeals the denial of penalties and attorney fees. We affirm.

*Facts*

On April 16, 2006, Wilton C. Portalis, Jr., was employed by Our Lady of Lourdes Regional Medical Center (Lourdes) as a dishwasher. At approximately 7:00 p.m. that evening, a garbage cart Mr. Portalis was pulling tipped over. The cart weighed approximately 350 pounds. Mr. Portalis claims that the cart struck and injured his left knee as it tipped over.

Mr. Portalis testified that the cart struck his left knee as it tipped over. He called to his supervisor, Judy Ellis, to help him pick up the strewn garbage. According to Mr. Portalis, as Ms. Ellis came to help him, she asked if he was hurt, and he told her that he was. Ms. Ellis helped him pick up the garbage and put it back in the cart. They tried to upright the cart but could not. Mr. Portalis removed some bags from the cart, and they were able to upright it. Mr. Portalis testified that he heard his knee crack on their first attempt to upright the cart. He also testified that he asked Ms. Ellis to fill out an accident report, but she could not find one.

Ms. Ellis did not see the cart tip over, and she denied that Mr. Portalis told her he was injured when the cart tipped over or that he wanted to fill out an accident report. However, she also testified that she was panicked that night, as it was nearly the end of the shift on Easter Sunday, most of the other workers were gone, and there was garbage all over the kitchen. Ms. Ellis left after the garbage cart was uprighted

1

and before Mr. Portalis completed his duties. Ms. Ellis only saw Mr. Portalis walk for a few seconds after the garbage cart was uprighted.

Mr. Portalis had ridden his bike to work that evening, as he usually did. He called John Breaux for a ride home because his knee was hurting. Mr. Breaux testified that he understood Mr. Portalis called him for a ride because he had been injured at work and that Mr. Portalis was "limping" and could barely walk to his truck when he arrived at Lourdes.

Mr. Portalis still could not ride his bike the next day and rode the bus to Lourdes. Upon arrival at Lourdes, he reported that he had been injured the night before when the garbage cart hit his knee, and he was referred to a clinic operated by Lourdes for treatment. He was examined by Amelie Hollier, a family nurse practitioner, who ordered an x-ray. Upon receipt of the x-ray report, Mr. Portalis was referred to Dr. Michael Duval, an orthopedist, who diagnosed a torn tendon in his left knee. Dr. Duval performed surgery on Mr. Portalis's knee on April 26, 2006.

Mr. Portalis was interviewed by Penny Thibodeaux, Lourdes's workers' compensation coordinator, after he was examined by Ms. Hollier. In his interview with Ms. Thibodeaux, Mr. Portalis stated that he contacted Mr. Breaux for a ride home the previous evening because his knee was hurt; he referred to Mr. Breaux as his "old boss." Workers' compensation benefits were started that day.

On May 18, 2006, Ms. Thibodeaux spoke to Mr. Breaux and asked whether Mr. Portalis had worked for him in the past. Mr. Breaux explained that Mr. Portalis had worked for him as a replacement for his regular worker, laying tile and carpet and painting. She did not ask Mr. Breaux the last date on which Mr. Portalis had worked for him.

Ms. Thibodeaux called Dr. Duval and asked whether it was possible that someone could suffer an injury such as Mr. Portalis's injury while laying tile or carpet. Dr. Duval wrote to Ms. Thibodeaux, explaining that it was possible to suffer such an injury while laying tile or carpet; however, he also explained that Mr. Portalis had reported he was injured while he was working at Lourdes. Upon receipt of Dr. Duval's letter on June 22, 2006, Ms. Thibodeaux notified Mr. Portalis in writing that his benefits were terminated.

On August 7, 2006, Mr. Portalis filed a claim for reinstatement of his benefits; he also sought penalties and attorney fees for wrongful termination of his benefits. A trial was held on June 28 and July 2, 2007. The workers' compensation judge (WCJ) ordered Lourdes to reinstate Mr. Portalis's benefits but denied his claim for penalties and attorney fees, finding Lourdes had reasonably controverted his claim. Lourdes appealed, and Mr. Portalis answered the appeal. Each assigns one error.

### Assignments of Error

Lourdes contends that the WCJ erred in finding Mr. Portalis proved the occurrence of a work-related accident on April 16, 2007, and Mr. Portalis urges that the WCJ erred in denying his claim for penalties and attorney fees.

### Work-Related Accident

Lourdes argues that the WCJ's acceptance of Mr. Portalis's claim that he was injured when the cart tipped over was error because it was based solely on his unreliable testimony which was discredited and cast in serious doubt by other evidence. Lourdes urges that the following facts cast serious doubt on Mr. Portalis's credibility and his claim that he was injured: 1) Mr. Portalis testified that he told Ms. Ellis he was hurt and discussed filling out an accident report the night of the

3

accident, which Ms. Ellis denied; and 2) Mr. Portalis continued to work and did not seek medical treatment at the hospital the night of the accident, even though, according to the nurse practitioner who treated him the day after the accident, his injury would have caused immediate pain. Lourdes also points to pre-accident and pre-trial claims by Mr. Portalis that he had never made a claim for workers' compensation benefits or personal injury damages, when he actually had, as evidence that the WCJ's factual findings were wrong.

In *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, pp. 7-8 (La. 7/1/97), 696 So.2d 551, 556 (citations omitted) (alteration in original), the supreme court set forth the standard of review in workers' compensation cases:

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Accordingly, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."

When the factual findings are based upon the credibility of witnesses, even greater deference is given because the WCJ is most aware of the variations in demeanor and tone that weigh so heavily in determining belief in what is being said. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

To recover workers' compensation benefits, a claimant must establish a "personal injury by accident arising out of and in the course of his employment." La.R.S. 23:1031(A). The claimant's burden of proof is by a preponderance of the evidence, even if the accident is unwitnessed. *Bruno v. Harbert Int'l, Inc.*, 593 So.2d

4

357 (La.1992). In *Bruno*, 593 So.2d at 361 (citations omitted), the supreme court set forth the following criteria for cases in which proof of the accident is supported by the claimant's testimony alone:

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence.

When ruling on Mr. Portalis's claim, the WCJ acknowledged the discrepancies between his testimony and Ms. Ellis's testimony but explained that she found his explanation of what occurred that night credible. Importantly, the WCJ relied on her perceptions of Mr. Portalis as he testified to assess his credibility, finding that while Mr. Portalis did make misstatements, she found him to be "simple-minded," which contributed to some of the questions concerning his credibility. The WCJ further explained that there was no suggestion Mr. Portalis was injured before he reported to work on April 16. Ms. Ellis's admission that she was panicked that night when the cart tipped over and Mr. Portalis's description of her to Ms. Thibodeaux as "hysterical" led the WCJ to conclude that it "didn't sink in" with Ms. Ellis that Mr. Portalis complained he was injured or in pain. The WCJ pointed out that while Ms. Hollier testified Mr. Portalis's injury would have caused him immediate pain and would have prevented him from walking without an obvious limp, she also testified that his pain would have worsened the more he walked. Consequently, the WCJ concluded that his limp may not have been noticeable to Ms. Ellis in the few seconds she saw him walk after the garbage cart was uprighted. The WCJ also observed that Mr. Portalis may have a high tolerance for pain. Lastly, although Ms. Thibodeaux

5

believed that Mr. Portalis may have gone to work for Mr. Breaux after he left Lourdes on April 16 and injured himself then, the WCJ was not persuaded that he had.

The inconsistencies complained of by Lourdes were addressed by the WCJ, especially that Mr. Portalis was not credible. Although there is evidence which may be construed as casting doubt on Mr. Portalis's credibility, the WCJ was in a better position to judge his credibility and thoroughly considered and weighed his testimony against Ms. Ellis's testimony and other evidence which cast doubt on his credibility. Accordingly, we find no error with the WCJ's determination.

### *Penalties and Attorney Fees*

Mr. Portalis argues that the WCJ erred in finding Lourdes reasonably controverted his claim prior to terminating his workers' compensation benefits on June 22, 2006, and in denying his claim for penalties and attorney fees as provided for in La.R.S. 23:1201(I). Under this provision, an employer who discontinues payment of benefits is subject to penalties and attorney fees "when such discontinuance is found to be arbitrary, capricious, or without probable cause." La.R.S. 23:1201(I).

The WCJ denied penalties and attorney fees, finding that resolution of this matter required a credibility determination which could not be made without a hearing because there was reasonable evidence which controverted Mr. Portalis's claim, e.g., Ms. Ellis's testimony that he did not tell her he was injured when the cart tipped over and that he did not request to fill out an accident report; Mr. Portalis's reference to Mr. Breaux as his boss; Mr. Breaux's corroboration that Mr. Portalis had worked for him laying carpet and tile; and Dr. Duval's opinion that Mr. Portalis could have injured his knee laying carpet or tile.

6

Mr. Portalis's credibility was called into question by Ms. Thibodeaux's investigation, and his claim could not be resolved on objective evidence alone. Therefore, we agree that a credibility determination was necessary to determine the validity of his claim, and we find no error with the WCJ's denial of penalties and attorney fees.

### *Disposition*

The judgment of the WCJ is affirmed. Costs of this appeal are assessed equally to Mr. Portalis and Lourdes.

**AFFIRMED.**

NUMBER 07-1509

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

WILTON C. PORTALIS, JR.

VERSUS

OUR LADY OF LOURDES REGIONAL MEDICAL CENTER, INC.

**Saunders, J., agrees in part, dissents in part, and assigns written reasons**.

I agree with the majority's finding that the WCJ committed no error in finding that Portalis was injured in a work-related accident. However, I do not agree with the majority's decision to affirm the WCJ's finding that Lourdes reasonably controverted the claim.

The record indicates the following facts were easily discoverable to Lourdes when it decided to discontinue Portalis' benefits:

• On April 16, 2006, Portalis rode his bike to work, as he usually did.

• Near the end of his shift at about 8:00 PM on Easter Sunday, a heavy cart tipped over near Portalis.

• Portalis claims to have told Judy Ellis of the injury while they were picking up the contents of the cart from the floor, and claims to have asked to fill out an accident report. Ms. Ellis claims he did neither.

• Ms. Ellis was panicked that night due to the cart tipping over so near the end of her shift on the night of Easter Sunday.

• On that night of the alleged accident, Portalis called his old boss, Mr. Breaux for a ride home from work despite having his bicycle.

• Mr. Breaux had understood that the reason Portalis wanted a ride home was that he was injured that night while working at Lourdes.

• Mr. Breaux observed Portalis was limping upon arrival to give him a ride home from work that evening.

- Mr. Breaux remembered that Portalis was in great pain, could barely walk, and needed help to load the bike into the vehicle.

- The following morning, Portalis rode the bus to work, rather than riding his bicycle.

- Upon arrival that morning at work, Portalis reported his injury from the night before.

- An objective injury was found via X-Ray ordered by Amelie Hollier, a family nurse practitioner.

- While Portalis stated that he had not ever filed a workers' compensation claim, he had actually filed one in the past.

- On May 10, 2006, Portalis mentioned Mr. Breaux to Penny Thibodeaux, the workers' compensation coordinator.

- Ms. Thibodeaux inquired as to the identity of Mr. Breaux. Portalis replied that Mr. Breaux was his "old boss."

- Ms. Thibodeaux spoke with Mr. Breaux. He told her that Portalis had filled in for another worker of his, Portalis' brother, in the past.

- Ms. Thibodeaux did not ask Portalis, nor Breaux, the date which they had last worked together.

- Portalis had not worked for Breaux since he began working at the hospital.

- Ms. Thibodeaux spoke to someone in Dr. Duval's office, inquiring whether Portalis' injury could have been from laying tile or carpet.

- Via letter, Dr. Duval stated that Portalis' injury could have happened while laying tile or carpet. However, that letter also indicated that Portalis had told Dr. Duval that the injury resulted from an accident that occurred while working at the hospital.

Given the above facts, I find that Thibodeaux acted arbitrarily and capriciously. Ms. Thibodeaux decided to discontinue Portalis' benefits on the fabricated theory that he was injured while working at another job with Mr. Breaux. Prior to discontinuing workers' compensation benefits, an employer/insurer has a duty to make a thorough inquiry into the facts of a case, not simply focus exclusively upon a sliver of evidence that could provide an excuse to discontinue coverage. Thus, I respectfully dissent.