STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-184


BOBBY SHIRLEY

VERSUS

J & S DOZER SERVICES, INC.


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
PARISH OF RAPIDES, NO.  07-5307
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Sylvia R. Cooks, James T. Genovese, and Shannon J. Gremillion, Judges.


                                                AFFIRMED.


Robert L. Beck III
Rivers, Beck, Dalrymple & Ledet
5208 Jackson Street Extension, Suite A
Post Office Drawer 12850
Alexandria, Louisiana 71315-2850
(318) 445-6581
ATTORNEY FOR PLAINTIFF/APPELLANT:
     Bobby Shirley

**Deanne B. McCauley**
**Rabalais, Unland & Lorio**
**200 Caroline Court**
**Covington, Louisiana 70433**
**(985) 893-9900**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **J & S Dozer Services, Inc.**

**GENOVESE, Judge.**

In this workers' compensation case, Claimant, Bobby Shirley, appeals the workers' compensation judgment denying his claim for workers' compensation benefits based on his failure to prove the occurrence of an accident arising out of and in the course and scope of his employment with J & S Dozer Services, Inc. (J & S). For the following reasons, we affirm.

## FACTS

Mr. Shirley was employed by J & S as a bulldozer operator. After allegedly being injured in an unwitnessed work-related accident on May 7, 2007, Mr. Shirley sought workers' compensation benefits from J & S. J & S denied his claim, and Mr. Shirley filed a Disputed Claim for Compensation (1008).

The 1008 filed by Mr. Shirley identified a date of accident occurring on "05/07/07 at approximately 7:00 a.m. in Bienville Parish, Louisiana." Mr. Shirley asserted that he "initially began experiencing pain in his lower back in late February or early March of 2007, after the bulldozer he was operating slid off of a road he was paving." Although he missed work following this incident, he "was able to adequately perform his job duties."

With respect to the alleged May 7, 2007 incident, the 1008 set forth that Mr. Shirley "was climbing onto his bulldozer, when his foot slipped[,] thereby causing him further injury." As a result thereof, Mr. Shirley sought medical and indemnity benefits as well as penalties and attorney fees.

In its answer, J & S denied that Mr. Shirley had "sustained an 'accident' or other 'injury' arising out of and in the course and scope of his employment." J & S asserted that the medical condition of Mr. Shirley was "the result of a pre-existing accident and/or pre-existing injury, which [had] in no way been exacerbated by an

accident within the course and scope of [Mr. Shirley's] employment with [J & S,] and[,] therefore, no medical benefits nor indemnity benefits [were] due."

Following a trial on July 24, 2008, the workers' compensation judge (WCJ) took the matter under advisement. The WCJ rendered judgment on October 16, 2008, at which time oral reasons were provided. Therein, the WCJ stated that "in the case of Mr. Shirley, the [c]ourt does believe that there is sufficient evidence objective in nature to cast doubt upon Mr. Shirley's claim for workers' compensation benefits." The WCJ signed a judgment in accordance therewith in favor of J & S, dismissing the claims of Mr. Shirley. Mr. Shirley appeals.

## ISSUES

Mr. Shirley presents the following issues for our review:

1. Did the WCJ commit legal error by taking judicial notice of facts not in evidence and not properly subject to judicial notice?

2. Did the WCJ commit manifest, as well as legal error, by finding that [Mr.] Shirley was not involved in an accident arising out of and in the course of his employment with J & S Dozer Service[s], Inc.?

3. Did the WCJ commit manifest, as well as legal error, by finding that [Mr.] Shirley did not establish by a preponderance of the evidence that he sustained a disabling injury due to a work[-]related accident?

4. Did the WCJ commit legal error by not awarding [Mr.] Shirley penalties and attorney fees due to [the] employer's failure to reasonably controvert claimant's entitlement to an a [sic] evaluation by a physician of his choice pursuant to La.R.S. 23:1121, La.R.S. 23:1124, and La.R.S. 1201[?]

## LAW AND DISCUSSION

### *Judicial Notice*

On appeal, Mr. Shirley asserts that "the WCJ committ[ed] legal error by taking judicial notice of facts not in evidence and not properly subject to judicial notice." Hence, he asserts that this court should conduct a *de novo* review of the record. We

2

disagree.

Mr. Shirley first asserts that it was improper for the WCJ to have taken judicial notice of the locations of different places that he could have gone for medical treatment. We first note that although counsel for Mr. Shirley objected to this line of questioning by defense counsel, the grounds stated for the record were "[n]o foundation and speculation." The statements made by the WCJ addressed locations and distances which are not "adjudicative facts" as defined by La.Code Evid. art. 201(A).[1] Additionally, the comments of the WCJ were not facts "subject to reasonable dispute." La.Code Evid. art. 201(B).

Mr. Shirley's second contention on the issue of judicial notice is that "it was improper for the WCJ to draw negative inferences from the fact that [Mr.] Shirley chose to rebut defendant's allegations" that he had injured his back while lifting an outboard motor. We do not find that this assertion by Mr. Shirley in any way invokes the application of judicial notice, and, therefore, we find no merit to this contention.

The third contention of Mr. Shirley as to "[t]he WCJ's abuse of his prerogative and misuse of the doctrine of judicial notice" involved comments made by the WCJ, during his oral reasons, on the contents of certain medical records. Again, we do not find that such comments in any way invoke the application of the doctrine of judicial

_____

[1]Louisiana Code of Evidence Article 201 provides, in relevant part, as follows:

**A. Scope of Article.** This Article governs only judicial notice of adjudicative facts. An "adjudicative fact" is a fact normally determined by the trier of fact.

**B. Kinds of facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either:

(1) Generally known within the territorial jurisdiction of the trial court; or

(2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

3

notice, nor do we find that the comments were relevant to the WCJ's determination that Mr. Shirley failed to meet his burden of proving the occurrence of a work-related accident. Rather, such comments are germane to the question of the nature and extent of injury and/or disability.

For the foregoing reasons, we do not find that the WCJ improperly took judicial notice of facts not in evidence. We also do not find any legal error warranting a *de novo* review of the record.

### *Proof of work-related accident*

> In *Dean v. Southmark Const.*, 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117, the supreme court stated:
>
>> In worker's compensation cases, the appropriate standard of review to be applied by the appellate court to the [Office of Workers' Compensation (OWC's)] findings of fact is the "manifest error-clearly wrong" standard. *Brown v. Coastal Construction & Engineering, Inc.*, 96-2705 (La.App. 1 Cir. 11/7/97), 704 So.2d 8, 10, (citing *Alexander v. Pellerin Marble & Granite*, 93-1698, pp. 5-6 (La.1/14/94), 630 So.2d 706, 710). Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. *Alexander*, 630 So.2d at 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Robinson v. North American Salt Co.*, 02-1869 (La.App. 1 Cir.2003), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Robinson*, 865 So.2d at 105. The determination of whether injury occurred in the course and scope of employment is a mixed question of law and fact. *Winkler v. Wadleigh Offshore, Inc.*, 01-1833 (La.App. 4 Cir. 4/24/02), 817 So.2d 313, 316 (citing *Wright v. Skate Country, Inc.*, 98-0217 (La.App. 4 Cir. 5/12/99), 734 So.2d 874).

*Butterfield v. Turner Indus.*, 06-1098, p. 3 (La.App. 3 Cir. 2/7/07), 951 So.2d 476,

4

479, *writ denied*, 07-507 (La. 4/27/07), 955 So.2d 692.

Louisiana Revised Statutes 23:1031(A) requires an employee seeking workers' compensation benefits to establish that he sustained "personal injury by accident arising out of and in the course of his employment." The term "accident" is defined in La.R.S. 23:1021 as:

> (1) "Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.

Relevant to the present appeal is this court's recent explanation of an employee's burden of proving the occurrence of an alleged unwitnessed, work-related accident as follows:

> The claimant's burden of proof is by a preponderance of the evidence, even if the accident is unwitnessed. *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992). In *Bruno*, 593 So.2d at 361 (citations omitted), the supreme court set forth the following criteria for cases in which proof of the accident is supported by the claimant's testimony alone:
>
> > A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence.

*Portalis v. Our Lady of Lourdes Reg'l Med. Ctr.*, 07-1509, pp. 4-5 (La.App. 3 Cir. 5/14/08), 984 So.2d 197, 200, *writ denied*, 08-1283 (La. 9/19/08), 992 So.2d 926.

Mr. Shirley asserts that his "version of the work accident and his injuries has never changed" and that "[t]he medical evidence introduced into evidence corroborated his testimony that he was involved in an accident arising out of and in

the court of his employment with J & S." Finally, Mr. Shirley contends that "several witnesses' testimony corroborated [his] version of events as well." We find that the record does not support these assertions.

Mr. Shirley testified at trial that he was injured on May 7, 2007, while working as a dozer operator for J & S when he attempted "to step up on a dozer and [his] foot slipped." He stated that he landed with his "right leg under him" and that he experienced pain in his right leg and lower back. According to Mr. Shirley, he contacted Stanley Garrett, the owner of J & S, that morning and reported to Mr. Garrett that he slipped on a dozer and hurt his back. It was Mr. Shirley's testimony that Mr. Garrett advised him to go for treatment at Trinity Chiropractic Clinic.

A review of the record reveals that Mr. Shirley's version of events at trial differed considerably from his earlier deposition testimony with which he was impeached. When giving his deposition, Mr. Shirley testified that he advised Mr. Garrett on May 7, 2007, that he had slipped; however, he did not relate to his employer that it had occurred that morning. Also contrary to his trial testimony was Mr. Shirley's earlier testimony that as of May 8, 2007, he had not advised Mr. Garrett that he was injured on the job.

Mr. Garrett's recollection of his conversations with Mr. Shirley on May 7, 2007, differed significantly from that of Mr. Shirley. Mr. Garrett testified that he did not even know for certain if Mr. Shirley ever arrived at the job site the morning of May 7, 2007. Mr. Garrett explained that he called Mr. Shirley at approximately 7:30 a.m. when he was advised that Mr. Shirley had not reported to work that morning. It was Mr. Garrett's testimony that Mr. Shirley told him that "he was hurting, he was sick, it was foggy[,] and he was gonna be late." About an hour later, Mr. Shirley

6

called him and stated that his back was hurting and that he was going to a chiropractor. During this second phone conversation, either Mr. Garrett or the passenger in his vehicle, Randy Williford, told Mr. Shirley where a chiropractor's office was located. It was Mr. Garrett's understanding that Mr. Shirley was leaving the job site to go to a chiropractor, but he had no way of knowing if he had actually gone to the job site that morning.

Mr. Garrett was adamant that Mr. Shirley did not advise him during the May 7, 2007 phone conversation that he had injured himself at work that morning. In fact, it was Mr. Garrett's testimony that at no time in the month of May did Mr. Shirley ever tell him that he injured himself while getting off a dozer. This is true despite Mr. Garrett "ask[ing] him several times if he had a job injury, and [Mr. Shirley saying that] it was nothing related to his job." The first time Mr. Shirley made any reference to Mr. Garrett about having slipped on a dozer and injuring himself was June 3, 2007.

Mr. Williford, the passenger in Mr. Garrett's vehicle, who was not an employee of J & S at that time, had the same recollection as Mr. Garrett about the substance of his conversations with Mr. Shirley the morning of May 7, 2007. Mr. Williford explained that Mr. Garrett was speaking on the speaker phone in his vehicle; therefore, he was able to hear both Mr. Garrett and Mr. Shirley speaking. Mr. Williford did confirm that there was a discussion about Mr. Shirley wanting to see a chiropractor; however, Mr. Shirley did not mention anything to Mr. Garrett about being injured on a bulldozer that morning.

Mr. Garrett also testified about subsequent conversations between him and Mr. Shirley. Even after Mr. Shirley reported that he had been injured on the job, he "couldn't give [Mr. Garrett] a date or a time" that the alleged work-related injury

occurred. Mr. Garrett explained that he did not have sufficient information to complete an accident report because Mr. Shirley remained unable to describe the occurrence of an accident. In the words of Mr. Garrett, Mr. Shirley's explanation was that he was injured due to "[a] series of operations." This explanation is consistent with Mr. Shirley's own admissions that the nature of the work he performed resulted in a jarring of his back which caused soreness on a regular basis. Mr. Shirley stated that his work was such that it yielded manageable back pain not requiring treatment.

Mr. Garrett's testimony also revealed that Mr. Shirley missed work frequently. Although Mr. Garrett described Mr. Shirley as a good dozer operator, it was clear from his testimony that Mr. Shirley had repeated attendance problems. One example provided by Mr. Garrett of particular relevance occurred in April of 2007, when Mr. Shirley "claimed he hurt his back picking up an outboard motor." This testimony of Mr. Garrett, which was consistent with that of other witnesses, expressly contradicted that of Mr. Shirley. Although Mr. Shirley at all times denied ever having injured himself in that manner, he did admit to having worn a back brace to work which, according to Mr. Garrett, occurred during that particular time frame.

Additionally, Mr. Shirley's co-employees acknowledged and verified that the only incident which they were aware of involving an injury to Mr. Shirley's back was the incident of his picking up an outboard motor. Mr. Williford, who had worked with Mr. Shirley prior to May 7, 2007, testified that Mr. Shirley had complained to him of back pain while they were working together. Mr. Williford learned from Mr. Shirley that he hurt his back while picking up an outboard motor. Mr. Freddie Lee, who also worked with Mr. Shirley, testified that Mr. Shirley first told him that he had back pain in March or April of 2007 when Mr. Shirley "said he had hurt his back

8

picking up an outboard motor." Mr. Lee also saw Mr. Shirley wearing a back brace at work, which he believed was at the same time that Mr. Shirley told him about the outboard motor incident. Additionally, Mr. Lee testified that he never heard Mr. Shirley complain of back pain from anything other than kidney stones and the incident involving the motor. In fact, he stated that Mr. Shirley told him about the injury involving the outboard motor "[a]t least two or three times."

Mr. Shirley did acknowledge a prior back injury in addition to that which was a result of his regular work activity. In the early 1990s, he stated that he injured his back and was treated for same. Mr. Shirley admitted to having soreness in his back due to the nature of his job, but denied that his back had gotten progressively worse before May 2007. However, this testimony of Mr. Shirley contradicted his deposition testimony wherein he admitted that "about the last month there before I slipped[,] it was getting to where it was. At times, it would be pretty bad."

Mr. Shirley called as a witness Contance Marie Lacher, his fiancée, to provide corroborating testimony on his behalf. She recalled that Mr. Shirley called her on May 7, 2007, and told her that he hurt his back that day when he slipped off a dozer. Additionally, although Mr. Garrett denied same, Ms. Lacher also stated that she informed Mr. Garrett that Mr. Shirley had slipped off a dozer and had hurt his back.

The testimony of other witnesses called by Mr. Shirley, however, cast further doubt on the manner in which he contends the May 7, 2007 accident occurred. Elwin Ray Shirley, Mr. Shirley's cousin, testified that Mr. Shirley called him on May 7, 2007, and told him that he needed to go to the doctor because he slipped off a dozer while working. Yet, he testified that Mr. Shirley told him that "he landed on his feet and he twisted" which differs from Mr. Shirley's account of the incident. Similarly,

9

Bobby George Shirley, Mr. Shirley's son, recalled being told by his father simply that "he slipped."

As the WCJ expressly noted, the medical evidence also casts doubt on Mr. Shirley's testimony. The records of the chiropractor, who treated Mr. Shirley on the day of the alleged accident, document a history of Mr. Shirley jarring his back *two weeks prior* when he was backing a dozer and hit a stump. When Mr. Shirley presented to Huey P. Long hospital on May 10, 2007, the hospital records reflect that he related a twenty-eight-year history of back problems. These records also reflect, in one portion thereof, that he reported intermittent back pain of a two-week duration, yet, in another, a duration of four days is documented with the description that "his foot slipped from under him while taking a step." Thereafter, and subsequent to Mr. Shirley retaining counsel and filing the 1008, he returned to Huey P. Long in August of 2007. As the WCJ noted, the records of Huey P. Long of August 4, 2007, contain the first documentation that Mr. Shirley related his present complaints as having been the result of his foot slipping while he was getting onto a bulldozer. On these subsequent visits, Mr. Shirley provided a detailed account of how the May 7, 2007 accident allegedly occurred.

In the instant matter, the WCJ provided a detailed recitation of the testimony and medical evidence upon which he based his decision. We agree with the WCJ that "the objective evidence cast[s] serious doubt upon Mr. Shirley's claim." Additionally, his testimony is not corroborated by the circumstances following the accident. Further, Mr. Shirley's testimony at trial was inconsistent with his earlier deposition testimony. The testimony of the witnesses also varied as to the manner in which Mr. Shirley related to them that he sustained injury. Moreover, the testimony

10

of Mr. Shirley's co-employees was consistent in that he told them that he sustained an injury involving an outboard motor. The co-employees also correlated this incident with Mr. Shirley wearing a back brace prior to May 2007. The medical records also contain conflicting histories of both when and how Mr. Shirley sustained injury. Also significant is Mr. Garrett's testimony that Mr. Shirley repeatedly denied that he sustained a work-related injury. We, therefore, find no manifest error in the conclusion of the WCJ that Mr. Shirley failed in his burden of proving the occurrence of a work-related accident. Having found that Mr. Shirley failed to prove the occurrence of a work-related accident, his remaining assignments are moot and need not be addressed.

## **DECREE**

For the foregoing reasons, the workers' compensation judgment is affirmed. Costs of this appeal are assessed to Bobby Shirley.

**AFFIRMED.**