REVISED October 9, 2009

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 9, 2009

Charles R. Fulbruge III
Clerk

No. 09-60191

CHRISTOPHER M. WILEY

Plaintiff-Appellant

v.

STATE FARM FIRE AND CASUALTY COMPANY

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before REAVLEY, JOLLY, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Hurricane Katrina reduced Plaintiff-Appellant Christopher M. Wiley's home to a slab. Although he carried a homeowner's insurance policy from Defendant-Appellee State Farm Fire and Casualty Company ("State Farm"), State Farm rejected his claims thereunder because his policy contained a water damage exclusion and an anti-concurrent cause provision. Wiley subsequently entered the Mississippi Department of Insurance ("MDI") Hurricane Katrina Mediation Program, and in 2006 signed a settlement agreement (the "2006

1

Settlement") with State Farm in which he released all claims for known damage in exchange for $80,235. Over a year later, State Farm sent Wiley a letter offering him an additional $26,798.13 "pursuant to the agreement reached between State Farm and the Mississippi Department of Insurance" in exchange for an additional release. Wiley rejected the second offer and brought suit, seeking to recover an even greater additional amount under his original homeowners' policy.

The district court granted State Farm's motion for summary judgment, holding that the 2006 Settlement barred Wiley's present claims. We affirm.

## I. FACTS AND PROCEEDINGS

In our review of a district court's grant of summary judgment, we present the facts in the light most favorable to the non-moving party.[1]

The facts of this case are sadly familiar: On August 29, 2005, Hurricane Katrina completely obliterated Wiley's Biloxi, Mississippi home, save for its slab. Wiley had insured his property[2] with State Farm for $444,000. Wiley's policy contained a water damage exclusion that included an anti-concurrent cause provision, however, and State Farm denied Wiley's wind-damage claim.

In October 2006, Wiley and State Farm entered the MDI's Hurricane Katrina Mediation Program. According to Wiley, the State Farm representative informed him that Mississippi law entitled State Farm to deny his entire claim because his home had been destroyed by the storm surge, an

---

[1] *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008) (citing *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006)).

[2] Wiley's policy covered his dwelling, a dwelling extension, personal property, and actual loss for sustained loss of use.

excluded peril under his policy. Wiley took this description of the law to be true, and, after considering and rejecting several offers, signed a settlement agreement (the "2006 Settlement") in exchange for $80,235. The 2006 Settlement provided that "if the insured(s) discovers additional insured damage that was not known to the parties prior to this mediation, the insured(s) may file a supplemental Katrina claim, which shall be treated as a new claim." Wiley maintains that the State Farm representative assured him that the 2006 Settlement entitled him to re-open or seek additional compensation for his Katrina-related losses.

Over a year after the 2006 Settlement, Wiley received a letter from State Farm (the "2007 Letter"), which explained that "pursuant to the agreement reached between State Farm and the Mississippi Department of Insurance,"[3] State Farm had re-evaluated Wiley's claim and was prepared to offer him an additional $26,798.13. In exchange, Wiley would have to sign a release (the "2007 Release"), in which he would agree to "release[], acquit[], and forever discharge[] [State Farm] from any and all claims that [Wiley] has or could have asserted, now or in the future . . . arising out of or related to the damage or loss from Hurricane Katrina. . . ."

Wiley contends that between the time of the 2006 Settlement and the 2007 Letter, he had learned from his neighbor, a civil engineer, that wind—and not solely storm surge—had caused part of the damage to his property. Wiley consequently refused to sign the 2007 Release and in May 2008, brought this suit against State Farm, alleging breach of contract and tortious breach of

---

[3] In April 2007, after negotiations with Mississippi regulators, State Farm agreed to re-evaluate and offer additional compensation to Mississippi policy-holders. Associated Press, *Katrina-related re-evaluations cost State Farm $29.8 million,* CHICAGO TRIBUNE, Aug. 14, 2007, at B3.

contract.

After completion of discovery, State Farm moved for summary judgment seeking dismissal of all of Wiley's claims. State Farm grounded its motion on the doctrine of settlement and release based on the 2006 Settlement. In December 2008, the District Court agreed, but held its order in abeyance and offered Wiley two weeks in which to present an affidavit that set forth any "new additional insured damage" that might support his claim. Wiley subsequently moved for reconsideration, which the district court denied and, in the same opinion, also rejected Wiley's argument —raised for the first time in his motion to reconsider—that the 2007 Letter and 2007 Release constituted a waiver of the 2006 Settlement. This timely appeal followed.

## II. ANALYSIS

The district court exercised diversity jurisdiction under 28 U.S.C. § 1332(a),[4] so we apply the substantive law of the forum state, in this case Mississippi.[5]

We review a district court's grant of summary judgment de novo. Summary judgment should be granted only if there is no genuine issue of material fact.[6] A fact is material only if its resolution would affect the outcome of the action,[7] and an issue is genuine only "if the evidence is sufficient for a

---

[4] Wiley is a resident of Mississippi and State Farm is incorporated in Illinois with its principal offices in Illinois.

[5] *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999).

[6] *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

reasonable jury to return a verdict for the nonmoving party."[8] We may, however, affirm a grant of summary judgment "on any legal ground raised below, even if it was not the basis for the district court's decision."[9]

The district court held that the 2006 Settlement barred Wiley's suit because it unambiguously constituted a complete release of all Katrina-related claims arising from insured damage known to Wiley at the time of the settlement, i.e., the total loss of his insured property. On appeal Wiley makes several claims of error: (1) The 2006 Settlement did not constitute a "full, final, and complete" settlement of Wiley's Katrina-related claims; (2) in the alternative, the 2007 Letter constituted a modification or waiver of the 2006 Settlement;[10] (3) State Farm should be estopped from relying on the 2006 Settlement because its agent misled Wiley with respect to State Farm's ability to deny Wiley any benefits under his policy and also with respect to Wiley's right to pursue additional payment for his Katrina-related losses under the 2006 Settlement. State Farm continues to defend on the ground that the 2006 Settlement constitutes a settlement and release of all Wiley's Katrina-related claims, as held by the district court.

A.     The 2006 Settlement, 2007 Letter, and 2007 Release

---

[8]  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[9]  *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003) (citing *In re Williams*, 298 F.3d 458, 462 & n.5 (5th Cir. 2002)).

[10]  State Farm contends that Wiley makes his waiver, modification, and estoppel arguments for the first time on appeal, and that they should therefore be barred. *Keelan v. Majesco Software Inc.,* 407 F.3d 332, 339 (5th Cir. 2005). We address this contention below.

5

1. The 2006 Settlement

Titled "Mississippi Department of Insurance Hurricane Mediation Program Settlement Agreement," the 2006 Settlement is a standard, one-page form with blank spaces for the parties' names. It states in relevant part:

> This settlement amount is full, complete and total final payment by the insurance company to the insured(s) for the Katrina claim brought to the mediation. Both parties release any and all Katrina claims of any kind whatsoever against one another, except that if the insured(s) discovers additional insured damage that was not known to the parties prior to this mediation, the insured(s) may file a supplemental Katrina claim, which shall be treated as a new claim.

2. The 2007 Letter

The 2007 Letter states in relevant part:

> "[State Farm] has completed its reevaluation of your claim pursuant to the agreement reached between State Farm and the Mississippi Insurance Department ("MID"). Based upon the information you have provided, our review of pertinent components of the claim file, and our agreement with the MID, State Farm is willing to offer you $26,798.13 to conclude this disputed claim. You can accept or reject this settlement offer.
>
> This settlement offer represents a compromise and is not an admission by State Farm that your claim was not correctly evaluated during its first review or of any wrongdoing on State Farm's part or a concession by State Farm as to any interpretation of the relevant insurance policy.
>
> ....
>
> If you reject the offer, you can request mediation or a non-binding arbitration of your claim through the Mississippi Insurance Department. . . . You can also do nothing. If you do not accept the offer from State Farm you retain all rights that you have, including

the right to pursue litigation.

### 3. 2007 Release

The unsigned 2007 Release states in relevant part:

("Releasor") . . . RELEASES, ACQUITS, AND FOREVER DISCHARGES the Released Parties . . . [State Farm] from any and all claims that Releasor has or could have asserted, now or in the future, against the Released Parties, arising out of or related to damage or loss from Hurricane Katrina to property insured by State Farm . . . .

As noted, Wiley did not accept the 2007 offer of an additional $26,798 and did not sign the 2007 Release.

## B. Mississippi Law

The Mississippi Supreme Court has established "a three-tiered approach to contract interpretation"[11] that begins with the text and applies the familiar "four corners test," which focuses exclusively on "an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence."[12] "Only if the contract is unclear or ambiguous" is a court authorized to resort to canons of interpretation and parol evidence. [13]

### 1. Whether the 2006 Settlement was a final settlement

There can be no serious argument that the 2006 Settlement

---

[11] *Facilities Inc. v. Rogers-Usry Chevrolet, Inc.,* 908 So. 2d 107, 111 (Miss. 2005) (citing *Pursue Energy Corp. v. Perkins,* 558 So.2d 349, 351-53 (Miss. 1990)).

[12] *Id.* at 111.

[13] *Id.* at 111.

unambiguously represented the "full, complete and a total final payment" for all insured damages that were known to Wiley at the time of the settlement. It is equally unambiguous that Wiley, in exchange for the payment of $80,325, released State Farm from "any and all Katrina claims of any kind whatsoever."[14] As Wiley forthrightly admits, Hurricane Katrina had already reduced his home to a slab at the time of the 2006 Settlement. Thus, although the 2006 Settlement expressly reserved the right for Wiley—or any other insured participating in the Mississippi Department of Insurance-sponsored mediation— to file a new claim based on insured, Katrina-related damage unknown or as yet undiscovered at the time of the 2006 Settlement, the 2006 Settlement was final with respect to all known damage.

In Wiley's case, Katrina's total destruction of his home, down to the slab, made impossible the discovery of any "additional insured damage." Wiley's contention that the "additional damage" reservation extends to the subsequent discovery of an additional or different cause of previously known damage contravenes the plain meaning of the phrase "additional insured damage." "The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law . . . . The parties are bound by the language of the instrument."[15]

---

[14] Wiley also urges us to assess his claims under principles of accord and satisfaction. This we cannot do because the Mississippi Supreme Court instructs us to "apply contract law analysis to settlement agreements. This is true of any type of negotiated settlement." *Chantey Music Pub., Inc., v. Malaco, Inc.*, 915 So. 2d 1052, 1056 (Miss. 2005).

[15] *Provident Life and Acc. Ins. Co. v. Goel*, 274 F.3d 984, 992 (5th Cir. 2001) (citing *Cherry v. Anthony, Gibbs, Sage,* 501 So. 2d 416 (Miss. 1987)) (internal citations omitted); *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 404 (Miss. 1997).

8

2.  Whether the 2007 Letter and 2007 Release waived or modified the 2006 Settlement

In the alternative, Wiley urges that the 2007 Letter and the 2007 Release modified or waived the 2006 Settlement and therefore permit his present suit. State Farm counters that these arguments were not preserved for our review because they were not raised before the district court.

Although it appears that Wiley did not straightforwardly present these arguments to the district court, it did discern and address the waiver argument that Wiley now urges on appeal. To the extent that his modification argument on appeal relies on contentions identical to those made in his waiver argument in the district court, albeit under a different label, we may review it here, cautioning, however, that "[i]f a party wishes to preserve an argument for appeal, the party 'must press and not merely intimate the argument during the proceedings before the district court.'"[16]

We note at the outset that Mississippi's adherence to the parol evidence rule does not foreclose a court's consideration of evidence that the original written contract was subsequently modified or waived.[17] Mississippi law defines a waiver as "an intentional surrender or relinquishment" of a known and existing right, and

> contemplates something done designedly or knowingly, which modifies or changes existing rights, or varies or changes the terms and conditions of a contract. It is the voluntary surrender of a right. To establish a waiver, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an

---

[16] *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005) (internal citations omitted).

[17] *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 441 n. 19 (5th Cir. 2007) (citing *Dixie S. Indus. Coating Inc. v. Miss. Power Co.*, 872 So. 2d 769, 772 (Miss. Ct. App. 2004)).

9

intention permanently to surrender the right alleged to have been waived.[18]

Similarly, "[t]he subsequent actions of parties pursuant to a contract may support a finding that the original contract has been modified to an extent consistent with the subsequent course of conduct."[19]

These doctrines offer only cold comfort to Wiley. In the 2007 Letter, State Farm's offer to Wiley of an additional amount was plainly made "pursuant to the agreement reached between State Farm and the Mississippi Insurance Department ("MID")," not pursuant to the 2006 Settlement. The 2007 Letter expressly stated that the additional settlement offer "is not an admission by State Farm that your claim was not correctly evaluated," nor "a concession." This language indisputably preserved the status quo established by the 2006 Settlement, and cannot reasonably be interpreted as evincing "an intention permanently to surrender the right alleged to have been waived."[20]

For substantially the same reasons, the 2007 Letter and 2007 Release cannot be construed as modifying the 2006 Settlement. The 2007 Letter was, by its terms, expressly not an action taken pursuant to the 2006 Settlement between State Farm and Wiley; rather, it was issued pursuant to negotiations between State Farm and its Mississippi regulators, to which Wiley was not a party. Moreover, the 2007 Letter and 2007 Release required new consideration:

---

[18] *Taranto Amusement Co. v. Mitchell Assocs, Inc.*, 820 So.2d 726, 729-30 (Miss. Ct. App. 2002) (citing *Ewing v. Adams,* 573 So. 2d 1364, 1369 (Miss. 1990)).

[19] *Fletcher v. U.S. Restaurant Properties, Inc.,* 881 So.2d 333, 337 (Miss. App. 2004) (citing *Kight v. Sheppard Bldg. Supply, Inc.,* 537 So. 2d 1355, 1359 (Miss. 1989) (citing *Stinson v. Barksdale*, 245 So.2d 595, 597-98 (Miss. 1971))).

[20] *Taranto Amusement Co.*, 820 So.2d at 730 (internal citations omitted).

In exchange for paying Wiley an additional $26,798.13, State Farm would receive an additional release from Wiley—a release not limited to the known, insured damage covered by the 2006 Settlement, but extending to any claim that Wiley "has or could have asserted, now or in the future...."  The fact that, in the 2006 Settlement, Wiley—by virtue of the total destruction of his home, and therefore the impossibility of discovering "additional damage"—had already released any and all claims he might have had against State Farm does not mean that the reference to any potentially outstanding claims in the 2007 Release somehow serves to resurrect rights already relinquished in the 2006 Settlement.  Neither does the 2007 Letter's statement that "if you do not accept the offer from State Farm, you retain all the rights you have, including the right to pursue litigation" somehow revive Wiley's right to litigate that which he had released under the 2006 Settlement.

3.    Whether estoppel applies

Wiley's recourse to the doctrine of estoppel—on the grounds that State Farm's representative misled him regarding the state of Mississippi law governing Wiley's policy and the 2006 Settlement—is similarly unavailing. State Farm insists that this argument was never properly before the district court, and we agree.[21]  Even though "'[n]o bright-line rule exists for determining whether a matter was raised below,"[22] when, as here, a district court does not address an argument and the briefing in the trial court contained only references

---

[21] "If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal."  *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir.1994).

[22] *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 142 n. 4 (5th Cir.1996) (internal citations omitted).

to facts,[23] but to no authority, that may support a claim of estoppel, we will not consider that argument for the first time on appeal.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is, in all respects, AFFIRMED.

---

[23] In his summary judgment briefing, Wiley alleged that State Farm's agent told him that the anti-concurrent cause provision included in his policy entitled State Farm to deny him any recovery under his insurance plan, and that this lead Wiley to agree to settle. We recently ruled that such clauses are valid under Mississippi law. *Leonard v. Nationwide Mut. Ins. Co.* 499 F.3d 419, 429-36 (5th Cir. 2005).

In addition, Wiley alleged that the State Farm agent misrepresented the terms of the 2006 Settlement. We note only that Mississippi law provides that "a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." *Ballard v. Commercial Bank of DeKalb,* 991 So. 2d 1201, 1207 (Miss. 2008) (internal citations omitted). Moreover, when, as here, the contract is unambiguous, "[a]s a matter of law, one may not reasonably rely on oral representations, whether negligently or fraudulently made by the [other party], which contradict the plain language of the documents." *Id*. at 1207 (internal citations omitted).