# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 24, 2013

No.  11-60728

Lyle W. Cayce
Clerk

JAMES ALFORD; ALL PLAINTIFFS; RUTHIE ALLEN; WILLIE ALLEN; REUBEN ANDERSON; ET AL,

> Plaintiffs - Appellees

v.

KUHLMAN ELECTRIC CORPORATION,

> Defendant - Appellant

v.

KUHLMAN CORPORATION; BORGWARNER, INCORPORATED,

> Defendants - Appellees

---

Appeal from the United States District Court
for the Southern District of Mississippi

---

Before STEWART, Chief Judge, GARZA, and ELROD, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Appellant Kuhlman Electric Corporation ("KEC") appeals from the district court's order denying KEC's motion for a declaration and specific performance of the obligations of Appellee BorgWarner Inc. ("BorgWarner") under the Master Settlement Agreement, the Merger Agreement, and the Cooperation Agreement.

No. 11-60728

Because the terms of the Merger Agreement and Cooperation Agreement are not incorporated into the Master Settlement Agreement, and BorgWarner fulfilled its obligations under the Master Settlement Agreement, we AFFIRM.

## I

In 1999, BorgWarner purchased Kuhlman Corporation ("Kuhlman") and all of its subsidiaries, including KEC. BorgWarner, Kuhlman, and KEC then entered into an Agreement and Plan of Merger ("Merger Agreement") whereby BorgWarner sold KEC to KEC Acquisition Corporation ("KAC"). In the Merger Agreement, Kuhlman and BorgWarner agreed to indemnify KEC and hold KEC harmless with respect to any damages, expenses or obligations incurred related to all liabilities for pre-closing environmental matters. The Merger Agreement is governed by Illinois law. Prior to, and at the time of BorgWarner's purchase, KEC owned a facility in Crystal Springs, Mississippi where it manufactured transformers. Shortly after KEC's sale to KAC, environmental contamination was discovered at Crystal Springs, and groups of plaintiffs began filing suit.

In 2005, BorgWarner, KEC, and Kuhlman also entered into a Joint Defense and Confidentiality Agreement ("Cooperation Agreement"). The Cooperation Agreement provides that KEC will allow BorgWarner to settle the Crystal Springs chemical exposure cases on its behalf and will cooperate with BorgWarner's settlement efforts, and in exchange BorgWarner will indemnify KEC and its affiliates with respect to settlement amounts and defense costs and expenses. The Cooperation Agreement states BorgWarner "shall waive any and all claims it may have against" KEC "to recoup or otherwise recover or be reimbursed for amounts paid in connection with such settlements." The Cooperation Agreement is governed by Illinois law.

In 2007 the plaintiffs filed the instant action in this court alleging that Kuhlman, KEC and BorgWarner improperly and negligently disposed of substances containing toxic chemicals at the Crystal Springs site, such

No. 11-60728

negligence resulting in injuries to the plaintiffs. The defendants have not filed any cross or counterclaims against each other.

In July 2010 the parties entered into a Master Settlement Agreement ("MSA"). Article 5.1 states in relevant part,

> BorgWarner will cause the settlement funds to be paid to Lead Plaintiffs' Counsel, in trust and for the use and benefit of the Crystal Springs Claimants. BorgWarner shall make payments of the Settlement Funds on behalf of [KEC] pursuant to the Agreement and Plan of Merger [Merger Agreement] (dated as of August 30, 1999) among BorgWarner, [KEC] and other entities.

Upon BorgWarner's payment of two settlement installments to plaintiffs' counsel in the amount agreed upon by the parties, the MSA requires the plaintiffs' claims to be dismissed with prejudice. The MSA also states nothing in its contents "should be construed to impair, change, or modify any separate agreement among BorgWarner and Kuhlman Corporation . . . on the one hand, and [KEC] and its affiliates on the other hand." The MSA is governed by Mississippi law.

In August 2010, BorgWarner filed a lawsuit in Illinois state court concerning the obligation of BorgWarner and Kuhlman to indemnify KEC under the Merger Agreement. BorgWarner and Kuhlman allege that KEC violated provisions of the Merger Agreement and thereby relieved BorgWarner and Kuhlman of their obligations under the Merger Agreement to defend and indemnify defendants for any of the pending defense and indemnification claims. BorgWarner and Kuhlman requested, *inter alia*, that the Illinois court declare they do not have any obligation under the Merger Agreement to defend or indemnify KEC with respect to the pending defense and indemnification claims.

KEC filed in this court a motion for declaration and specific performance of, BorgWarner's obligations under the MSA, the Merger Agreement, and the Cooperation Agreement. In February 2011, BorgWarner made its second and

3

final settlement payment required by the MSA. BorgWarner and the plaintiffs opposed KEC's motion. Having made all required settlement payments under the MSA, BorgWarner filed a motion, joined by the plaintiffs, to dismiss the plaintiffs' claims with prejudice. The district court denied KEC's motion and granted Borg Warner's motion to dismiss with prejudice. KEC appealed.

## II

"A settlement agreement is a contract." *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992) (citing *In re Raymark Indus., Inc.*, 831 F.2d 550, 553 (5th Cir. 1987)). The interpretation of an unambiguous contract is a question of law, subject to de novo review. *Id.* (citing *LTV Educ. Sys., Inc. v. Bell*, 862 F.2d 1168, 1172 (5th Cir. 1989)). Only where an agreement is ambiguous, such that its construction turns on a consideration of extrinsic evidence, do we review the district court's interpretation for clear error. *Id.* (citing *Nat'l Union Fire Ins. Co. v. Circle, Inc.*, 915 F.2d 986, 989 (5th Cir. 1990)).

## III

The case sub judice is between the Crystal Springs plaintiffs on one hand and BorgWarner, Kuhlman, and KEC on the other hand. Because the defendants have filed no counterclaim or cross-claim among themselves, the terms of the defendants' Merger Agreement and the Cooperation Agreement are not relevant unless their terms are incorporated into the MSA.

The district court held neither the Cooperation Agreement nor the Merger Agreement is expressly incorporated into the MSA and neither agreement modifies the settlement payment provision of the MSA. Because the MSA does not mention the Cooperation Agreement in relation to settlement payments or in any provision relevant to settlement payments, the district court held the Cooperation Agreement was inapplicable to its determination of whether the MSA had been satisfied. The district court further held the single reference to the Merger Agreement in the payment provision of the MSA was not sufficient

to incorporate additional terms from the Merger Agreement into the MSA. The district court held the requirement that BorgWarner pay "pursuant to the Merger Agreement," simply referred to the Merger Agreement as the basis for the general obligation of BorgWarner to indemnify KEC. Because the district court did not find any ambiguity in the MSA, the district court did not look outside the four corners of the agreement in determining neither the Cooperation Agreement nor the Merger Agreement added terms to the MSA.

KEC asserts the Merger Agreement and Cooperation Agreement add terms, most significantly a waiver of recoupment of settlement payments, to those expressly provided in the payment provisions of the MSA. Because the MSA states BorgWarner must make settlement payments "pursuant to" the Merger Agreement, KEC contends the terms of the Merger Agreement are applicable to the enforcement of the MSA. KEC alleges the Merger Agreement's requirement that BorgWarner hold KEC harmless for all costs and liabilities relating to the settlement is incorporated into the MSA. KEC asserts the Cooperation Agreement is also relevant to the enforcement of the MSA. KEC admits the MSA's payment provisions contain no reference to the Cooperation Agreement. KEC contends (1) the Cooperation Agreement "reinforces" or "reaffirms" the fact the MSA requires BorgWarner to hold KEC harmless; (2) the Cooperation Agreement is included in the MSA's four corners through a reference in Article 11.1 of the MSA to "separate agreements among" the parties; or (3) the MSA should be interpreted "with" the Cooperation Agreement. In any event, KEC alleges the terms of the Cooperation Agreement are relevant to determining BorgWarner's obligations under the MSA. KEC requests we reverse and remand mandating the district court enforce the MSA with an order stating Borg Warner is barred from seeking to recover the settlement funds from KEC.

No. 11-60728

"Under Mississippi law, if a contract incorporates another document by reference, both documents must be read together to give full effect to the intent of the parties." *Galey v. World Mktg. Alliance*, 510 F.3d 529, 532 (5th Cir. 2007) (citing *United Miss. Bank v. GMAC Mortg. Co.*, 615 So.2d 1174, 1176 (Miss. 1993)). Because settlement agreements are contracts, they are subject to general rules of contract interpretation. *See West v. West*, 891 So. 2d 203, 210 (Miss. 2004). Mississippi's three-tiered approach to contract interpretation requires courts to first apply the four corners test, focusing exclusively on the objective reading of the words employed in the contract, to the exclusion of parol and extrinsic evidence. *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 211 (5th Cir. 2009). Only if the language of the contract is unclear can courts employ canons of construction or parol evidence. *Id.*; *One S., Inc. v. Hollowell*, 963 So.2d 1156, 1163–64 (Miss. 2007) (holding consideration of parol or extrinsic evidence is impermissible where contract is unambiguous). The mere fact parties disagree about the meaning of the contract does not render the contract ambiguous as a matter of law. *Wiley*, 585 F.3d at 212.

The MSA's statement in Article 5.1 that "BorgWarner shall make payments of the Settlement Funds on behalf of [KEC] pursuant to the [Merger Agreement]" is insufficient to incorporate the terms of the Merger Agreement into the MSA. There is no authority under Mississippi law for the proposition that this reference could suffice to incorporate the Merger Agreement's requirement that BorgWarner hold KEC harmless. Courts applying Mississippi law have found a contract incorporates terms from another agreement where the contract explicitly adopts the entire agreement or explicitly references particular terms in the agreement. *See, e.g., Galey*, 510 F.3d at 532; *Perry v. U.S.*, 146 F.2d 398, 400 (5th Cir. 1945) ("[A] reference in subcontract to the provisions, plans and specifications of a general contract imports them into the subcontract where not inconsistent with its terms . . . ."). In *Galey* we held an arbitration agreement

incorporated the entirety of the National Association of Securities Dealers rules by reference where agreement provided for "arbitration in accordance with the rules then in effect of the National Association of Securities Dealers, Inc. (NASD). Such arbitration shall follow the procedures as set forth by a national arbitration committee of the NASD." *Id.* The language in the MSA referencing the Merger Agreement is far more limited in scope than the language we held sufficient to incorporate the NASD rules in *Galey.* The MSA does not reference the "provisions, plans and specifications of" the Merger Agreement. *See Perry*, 146 F.2d at 400. The MSA merely states BorgWarner shall make the settlement payments "pursuant to the Merger Agreement." *See One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 267 (5th Cir. 2011) (holding that where a contract shows a "clear intent" to incorporate an extrinsic agreement both instruments will be read together). Therefore, the disputed phrase did not suffice to incorporate the Merger Agreement into the MSA.

The term "pursuant to" has multiple meanings and its use does not automatically trigger incorporation of the referenced agreement or statute. "The term 'pursuant to' is generally defined as 'in compliance with; in accordance with; under [or] . . . as authorized by . . . [or] in carrying out." *United States v. DeCay*, 620 F.3d 534, 544 (5th Cir. 2010) (quoting Black's Law Dictionary (8th ed. 2004)). The context of the sentence determines whether the phrase merely references the source of an obligation or actively incorporates an extrinsic agreement. *See, e.g., In re Phar-Mor, Inc.*, 172 F.3d 270, 274 (3d Cir. 1999) (holding where court dismissed an action "pursuant to the terms of the Settlement," phrase did not suffice to incorporate terms of the settlement agreement into the dismissal order). Here, in the context of the MSA, the phrase "pursuant to" refers to the Merger Agreement only as the basis for BorgWarner's payment obligation.

At the very least the MSA's mere reference to BorgWarner's obligation to make settlement payments "pursuant to" the Merger Agreement does not,

without more, incorporate the Merger Agreement's requirement that BorgWarner hold KEC harmless. *See Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 358 (5th Cir. 2004) ("It is well settled that a reference by contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified."). "While discussion of incorporation by reference is often framed in terms which suggest the complete absorption of one document into another, it is important to note that when incorporated matter is referred to for a specific purpose only, it becomes a part of the contract for that purpose only, and should be treated as irrelevant for all other purposes." 11 Williston on Contracts § 30:25 (4th ed.); *see also Sorrells v. Alexander Bros.*, 144 So. 560, 560 (Miss. 1932) ("Fact that log sawing contract referred to cutting and hauling contract for description of timber and land did not make cutting and hauling contract, which provided for cutting and hauling of all merchantable timber, govern as to quantity of timber to be sawed . . . ."); *Guerini Stone Co. v. P.J. Carlin Const. Co.*, 240 U.S. 264, 278 (1916) (holding statement in subcontract that work would be done in accordance with drawings and specifications delivered by general contractor merely specified what work was to be done and in what manner but did not incorporate terms from the general contract to subcontract). Therefore, while the MSA arguably incorporated the Merger Agreement's requirement that BorgWarner make the settlement payments, the language in Article 5.1 does not suffice to incorporate the Merger Agreement's requirement that BorgWarner hold KEC harmless.

KEC's contention that the MSA incorporated the Cooperation Agreement's terms through MSA Article 11.1 strains credulity. Article 11.1 states that nothing in the MSA's contents "should be construed to impair, change, or modify any separate agreement among BorgWarner and Kuhlman Corporation . . . on the one hand, and [KEC] and its affiliates on the other hand." Merely because the MSA does not change the terms of the separate agreements between the

parties provides no basis for incorporating the terms of those separate agreements into the MSA. KEC has provided no authority for its position that this language suffices to incorporate the terms of the Cooperation Agreement into the MSA. As such, the terms of the Cooperation Agreement are not incorporated into the MSA.

The MSA has only one condition for release: payment of the settlement funds pursuant to the Merger Agreement. As such, BorgWarner's final settlement payment to the plaintiffs fulfilled BorgWarner's obligations under the MSA. No further action is necessary to enforce the MSA. Our holding does not, of course, prevent KEC from litigating its claims of breach of the Merger Agreement or the Cooperation Agreement in the Illinois proceeding.

## IV

KEC filed a motion to supplement the record, or alternatively, to take judicial notice of relevant admissions by BorgWarner and Kuhlman Corporation in a separate suit. We denied KEC's motion to supplement the record on appeal and carried the motion to take judicial notice of relevant admissions with the case. Because we hold the language in the MSA is unambiguous, *see Wiley*, 585 F.3d at 210 (holding where contracts are unambiguous extrinsic evidence is inadmissible), we DENY KEC's motion to take judicial notice of admissions by BorgWarner and Kuhlman Corporation.

## V

For these reasons, we AFFIRM.

No. 11-60728

JENNIFER WALKER ELROD, Circuit Judge, dissenting:

I respectfully dissent. I disagree with the majority opinion's conclusion that the Master Settlement Agreement ("MSA") does not incorporate the terms of the Agreement and Plan of Merger. Moreover, even if the majority opinion's interpretation of the MSA were correct, *Texas Employers Association v. Jackson*, 862 F.2d 491 (5th Cir. 1988), and its progeny would bar the declaratory relief Kuhlman Electric Corporation seeks; therefore, the district court should not have considered the merits of the motion for declaratory relief.